Parker, C. J.
If Douglas was, at the time the militia service was required of him, “a mariner actually employed in the sea service of any citizen or merchant of the United States,” he was exempt from militia duty. He was the master or skipper of a vessel of more than twenty tons burden, duly licensed to carry on the cod fishery; and he had entered into an agreement with his crew, conformably to the law of the United States. He was actually at sea, on the day when the muster was held, having been duly warned to attend on that day. He returned within less than eight days after.
It is said he should have applied, within the eight days, to the commander of the company, to be excused. But this was not necessary, if by law he was exempted from serving.
*41 To ascertain what constitutes a mariner, within the meaning of the statute of the United States above alluded to, recurrence must be had to the laws of the United States; because, as to the regulation of the militia, and of the sea service, those laws are, by the constitution, paramount. To be “ actually employed in the sea-service of a citizen or merchant of the United States,” is to be a mariner, and, in that character, liabilities and privations are incurred, which are inconsistent with militia duty ; because mariners properly engaged are subjected to duties and penalties at all times and seasons; and the public interest is as dependent on the uninterrupted performance of their duty, as in the training and disciplining of the militia. Now, men employed in the fishing business, in vessels * which require a license, and an [ * 5£ ] agreement in the nature of a shipping paper, are as much mariners, as those who go on coasting or foreign voyages, and they are so treated by the laws of the United States.
The statute of the United States of the 19th of June, 1813, provides that the master or skipper of any vessel, of the burden of twenty tons and upwards, qualified to carry on the bank and other cod fisheries, shall have an agreement, &c.; and that the men who sign the agreement shall be subject to penalties for desertion, in the same manner as mariners in the merchants’ service. They may be apprehended and dealt with in the same manner. If, therefore, any of the fishermen, thus engaged, should remain to train in the militia, when the vessel was about to sail, they would be liable as deserters. These men are essentially mariners, being subject to all the laws of the United States relating to that class of citizens.
In 1811, the legislature of this commonwealth by law exempted mariners of this description from militia service (7). This statute was merely declaratory, in order to remove doubts and difficulties from the minds of those whose duty it was to see to the execution of the militia laws. For, if mariners, they were exempt by the paramount laws of the United States. But, in 1814, the law was repealed, and fishermen of this description were again attempted to be made liable (8). This also is a declaratory law; and nothing more can be inferred from either statute than that the legislature of one year construed the laws of the United States differently from the legislature of another year. Our decision is to be founded on the constitution and laws of the United States.
The case of the Commonwealth vs. Newcomb, cited in the argument, is not like the one before us; for in that case the man was *42 not in fact employed in the sea service. The respondent in the present case being master of the vessel, the exemption applies to him, with at least as much force as to the crew.

Proceedings quashed

 Slat. 1810, c. 111.

 Stat. 1814, c. 63.