## In re SCOTT.

### (District Court, S. D. Alabama. May 7, 1918.)

### No. 350.

ALIENS ⬤⟹61—NATURALIZATION—"SEAMAN."

A master mariner is a seaman, within Rev. St. § 2174 (Comp. St. 1916, § 4357), declaring that every seaman, being a foreigner, who declares his intention of becoming a citizen of the United States in any court of competent jurisdiction, and shall have served three years on board of a merchant vessel of the United States subsequent to the declaration, may be admitted to citizenship, etc.; for the word "seaman," as defined by lexicographers, is one whose occupation is to assist in the management of ships at sea, and includes both officers and common mariners, and the statute, for the benefit of the United States, should not be construed as including only common sailors, and excluding those who may have risen to the top of their profession.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Seaman.]

In the matter of the petition of Varian Cuthbert Scott, a citizen of the British West Indies, to be granted naturalization. Petitioner admitted to citizenship.

ERVIN, District Judge. In this case, the proof showed that the applicant is a master mariner, and the question is raised whether a master is such a seaman as is contemplated by section 2174, which reads as follows:

"Every seaman, being a foreigner, who declares his intention of becoming a citizen of the United States in any competent court, and shall have served three years on board of a merchant vessel of the United States subsequent to the date of such declaration, may, on his application to any competent court, and the production of his certificate of discharge and good conduct during that time, together with the certificate of his declaration of intention to become a citizen, be admitted a citizen of the United States; and every seaman, being a foreigner, shall, after his declaration of intention to become a citizen of the United States, and after he shall have served such three years, be deemed a citizen of the United States for the purpose of manning and serving on board any merchant vessel of the United States, anything to the contrary in any act of Congress notwithstanding; but such seaman shall, for all purposes of protection as an American citizen, be deemed such, after the filing of his declaration of intention to become such citizen." R. S. 1878, p. 380, 1 Comp. Stat. 1901, p. 1334 (Comp. St. 1916, § 4357).

"Seaman" is defined by Webster as:

"One whose occupation is to assist in the management of ships at sea; a mariner; a sailor; applied both to officers and common mariners."

It is common knowledge that a man must be a seaman before he can be a master. It is manifest that the word "seaman" might be used in different enactments in different senses, and the intended sense might appear from the context. If there is nothing in the context to

show the sense in which the word is used, then it seems to me that it should be given the broadest meaning, so as to include a master, as well as a common seaman before the mast.

Certainly an enabling act, such as this, should not receive such a narrow construction as to deprive one who comes within its terms of any rights thereby given, merely because he happened to be a high-class man instead of a low-class one. The fact that a man has made the most of his opportunities, and has risen to the head of his profession, should not bar him from receiving the benefits conferred on his profession. Nor, again, looking at the act from the angle of the benefit to this country from the people who are admitted as citizens, we should not admit the lower classes of a profession, and deny admission to the heads of the profession, as it is manifest that, the higher the class and more skillful the applicant, the more valuable citizen he would make.

I have found no case in which the identical question now raised has been considered, but there are certain cases that are very persuasive by analogy as to the construction to be given this act. Judge Story, in United States v. Winn, 28 Fed. Cas. No. 16,740, where the question was the construction of Act Cong. March 3, 1835, c. 40, § 3, 4 Stat. 776, providing that, "if any master or other officer, etc., shall from malice, hatred, or revenge, and without justifiable cause, beat, wound or imprison any one or more of the crew." etc., he shall be punished by fine, etc., in construing that statute, says:

"Now, I do not think anything material in the construction of this statute can turn upon the rule, so ably and strenuously expounded at the bar, that penal statutes are to be construed strictly. I agree to that rule in its true and sober sense; and that is that penal statutes are not to be enlarged by implication, or extended to cases not obviously within their words and purport. But where the words are general, and include several classes of persons, I know of no authority which would justify the court in restricting them to one class, or in giving them the narrowest interpretation, where the mischief to be redressed by the statute is equally applicable to all of them. And where a word is used in a statute, which has various known significations, I know of no rule that requires the court to adopt one in preference to another, simply because it is more restrained, if the objects of the statute equally apply to the largest and broadest sense of the word. In short, it appears to me that the proper course in all these cases is to search out and follow the true intent of the Legislature, and to adopt that sense of the words which harmonizes best with the context, and promotes in the fullest manner the apparent policy and objects of the Legislature."

This was a criminal case. In the case of Hubbard v. Hubbard, 8 N. Y. 196, the question before the court was the probate of a nuncupative will, and Mason, J., speaking for the court, says:

"It is provided in this state by statute that no nuncupative or unwritten will, bequeathing personal estate, shall be valid, unless made by a soldier while in actual service, or by a mariner while at sea. 2 R. S. p. 60, § 22. As to the wills of soldiers in actual service, and mariners at sea, they are left entirely untrammeled by our statutes, and are governed by the principles of the common law. The exception in our statute of wills in favor of soldiers and mariners was taken from St. 29 Car. II, c. 3, and is precisely the same, and the same exception is retained in England by their new statute of wills. 1 Vict. c. 26, § 11. The testator was a mariner within the meaning of this statute. The courts have given a very liberal construction to this exception

in behalf of mariners, and have held it to include the whole service, applying equally to superior officers up to the commander in chief as to common seamen."

In the case of Bayley v. Merritt, 2 Pick. (Mass.) 597, it was shown that Bayley was the master of a schooner belonging to a citizen of the United States, and that for 4½ months he had, in that vessel, with a sufficient crew, been engaged in catching mackerel, and the question was whether or not this was a sufficient excuse for having failed to attend muster. The court, speaking through Parker, C. J., says:

"We are of opinion that the petitioner, at the time when he was warned to do the militia duty in question, was a 'mariner actually employed in the sea service of a citizen of the United States,' and therefore exempt from militia duty. There is no substantial difference between this case and that of Commonwealth v. Douglas [17 Mass. 49]. The respondent in that case and the petitioner here were both fishermen in licensed vessels, and they usually, after getting a fare, came into harbor and prepared for another voyage. In one case codfish, and in the other mackerel, was the object. This surely constitutes no difference. The real question is whether the employment at sea is so constant as to be incompatible with the performance of militia duty on shore; and this clearly is the case with respect to the mackerel fishery in the season of it. That there was no shipping paper, we think, can make no difference in the character of the employment; that was only one circumstance, among others enumerated in the case of Commonwealth v. Douglas, to prove that the respondent was a mariner. But a vessel may go on a foreign voyage without a shipping paper, and so she may a fishing voyage, risking the inconvenience of being without one."

I therefore find that the petitioner was such a seaman as was contemplated by the section, and a decree will be entered admitting him to citizenship.