Nessen Transportation Company, Appellant, v. J. L. Larsen. Gartland Steamship Company et al., Appellees.

## Gen. No. 39,239.

Opinion filed April 19, 1937.   Rehearing denied May 3, 1937.

Kremer, Branand & Hayes, of Chicago, for appellant; Harvey Wienke, of Chicago, of counsel.

Pope & Ballard, of Chicago, for appellees; Beverly B. Vedder, Ferris E. Hurd and John F. Manierre, all of Chicago, of counsel.

Mr. Justice O'Connor delivered the opinion of the court.

The Nessen Transportation Co., a corporation, brought an action of attachment against J. L. Larsen to recover $4,732.11 claimed as damages sustained by plaintiff on account of Larsen's breach of contract. Larsen was not served and did not appear. The Gartland Steamship Co. and Arthur Sullivan and Harry J. Sullivan, copartners, doing business as D. Sullivan & Co., were served as garnishees. The Steamship Company answered that it owed Larsen $400 for wages but claimed a set-off for this amount. Sullivan & Co. answered that they had no funds or property belonging to Larsen. The case was tried before the court without a jury, the facts being stipulated. At the conclusion of the hearing the court, on its own motion, dismissed the cause for want of jurisdiction and plaintiff appeals.

Plaintiff contends that the municipal court erred in dismissing its suit on the ground of want of jurisdiction, and counsel for the Steamship Company seem to concede that the municipal court had jurisdiction. We think it obvious that the court erred in holding it had no jurisdiction.

The facts as stipulated, so far as necessary to state them for the purpose of this opinion, are that the Steamship Company operated a motorship in the Great Lakes and employed Larsen as master, and that at the time of the service of the garnishee summons on the Steamship Company it owed Larsen $400 for September wages earned by him as master of the

ship. The wages of Larsen and of the crew of the ship were payable at the end of each month, and on October 1, 1935, the Steamship Company wrote to Larsen, who was then in charge of the ship at Duluth, Minnesota, inclosing check for $850, with directions that he pay the crew this money for their September salaries, and advising him that they were holding his check for $400, his September wages, pending the outcome of the garnishment suit. Larsen cashed the check, took out $400 for himself and paid the crew $450, leaving a balance due the crew on that date of $400. Upon arrival of the boat at Chicago on October 8, the Steamship Company paid the $400 to the crew, being the balance of their September wages. The Steamship Company had no knowledge until October 8 that Larsen had taken the $400 and applied it on his wages, and his action in this regard was unwarranted.

The chief controversy between counsel is whether the wages of Larsen, who was master of the boat, were exempt from garnishment under the provisions of sections 601 and 713, Title 46 U. S. C. A. (chap. 18).

Plaintiff takes the position that the wages were not exempt. Section 601 provides: ''No wages due or accruing to any seaman or apprentice shall be subject to attachment or arrestment from any court, and every payment of wages to a seaman or apprentice shall be valid in law, notwithstanding any previous sale or assignment of wages or of any attachment, encumbrance, or arrestment thereon; and no assignment or sale of wages or of salvage made prior to the accruing thereof shall bind the party making the same, except such allotments as are authorized by this chapter. This section shall apply to fishermen employed on fishing vessels as well as to seamen.''

Section 713, which is entitled ''Definitions, schedule, and tables,'' provides: ''In the construction of this

chapter, every person having the command of any vessel belonging to any citizen of the United States shall be deemed to be the 'master' thereof; and every person (apprentices excepted) who shall be employed or engaged to serve in any capacity on board the same shall be deemed and taken to be a 'seaman.' ' '

Plaintiff's position is that under the provisions of the above sections the ''wages'' of the ''seamen'' of a vessel are exempt from garnishment but not the wages of the ''master.'' We think the contention cannot be sustained. Section 601 exempts the wages of any ''seaman'' from garnishment, and section 713 provides that every person having command of any vessel shall be deemed to be the master and that every person ''employed or engaged to serve in any capacity on board the same shall be deemed and taken to be a 'seaman.' '' The ''master'' certainly is employed and engaged to serve on board the vessel and therefore comes within the definition of a ''seaman.''

In *In re Scott,* 250 Fed. 647, in construing a statute which provided that a ''seaman,'' a foreigner who had declared his intention of becoming a citizen of the United States, may be naturalized, it was held that the term ''seaman'' included the master of a vessel.

In *The Burns Bros. No. 31,* 29 F. (2d) 855, the court was called upon to construe the word ''seaman'' in a United States statute, and it was held that it included the master of a tug.

In *The Balsa, Cummins v. Wry,* 10 F. (2d) 408, again the word ''seaman'' was held to extend to the master of a vessel.

In *International Stevedoring Co. v. Haverty,* 272 U. S. 50, plaintiff, a stevedore, was engaged in storing freight in the hold of a vessel, and he was held to be a ''seaman'' within the provisions of the U. S. statute which provided that ''any seaman who shall suffer

personal injury in the course of his employment may . . . maintain an action for damages at law, . . .

"It is true that for most purposes, as the word is commonly used, stevedores are not 'seamen.' But the words are flexible. . . . We cannot believe that Congress willingly would have allowed the protection to men engaged upon the same maritime duties to vary with the accident of their being employed by a stevedore rather than by the ship."

And again the Supreme Court of the United States held that the term "seaman" includes a stevedore working in the loading of a foreign vessel. *Uravic v. Jarka Co.*, 282 U. S. 234.

In *Warner v. Goltra*, 293 U. S. 155, the court held that the "master" of a tug boat was a "seaman" within the meaning of the statute. The court there said: " 'It is true that for most purposes as the word is commonly used, stevedores are not "seaman." ' *Int. Stevedoring Co. v. Haverty*, 272 U. S. 50, 52. None the less, verbal niceties were bent to the overmastering purpose of the act, to give protection to the workers injured upon ships. 'Words,' we said, 'are flexible' . . . In a narrow sense the term is limited to one who is an ordinary seaman and nothing more. A seaman, as opposed to the master or an officer. One can find a like range of variation in the use of the word 'crew.' 'It is sometimes used to comprehend all persons composing the ship's company, including the master; sometimes to comprehend the officers and common seamen, excluding the master; and sometimes to comprehend the common seaman only, excluding the master and officers.' . . . What concerns us here and now is not the scope of the class of seamen at other times and in other contexts. Our concern is to define the meaning for the purpose of a particular statute which must be read in the light of the mischief to be

corrected and the end to be attained. Congress knew that men employed upon a ship were without a remedy in damages for negligence beyond their care and maintenance, unless the injury was a consequence of the unseaworthiness of the ship or a defect in her equipment.''

From the foregoing authorities and others which we have not referred to, it is apparent that the word ''seaman'' has been given different meanings, as that term has been used in different statutes. Obviously the term ''seaman'' may not have the same meaning in all statutes. The general tendency of the acts of Congress and the decisions of the courts has been ''directed to extension, not to restriction,'' of the term ''seaman'' and the master of a vessel has not been specifically excluded in the definitions found in section 713. We therefore hold the master to be a seaman within the meaning of that section, and his wages, under section 601, are not subject to garnishment.

While it is unnecessary to pass on the question of the Steamship Company's set-off because that matter has not been argued, yet we might observe, since the facts are stipulated, that we are unable to see why the set-off should not be allowed, in which case, obviously, plaintiff could not recover.

The judgment of the municipal court of Chicago is affirmed.

*Judgment affirmed.*

MATCHETT, P. J., and McSURELY, J., concur.