## THE PUTNICK.

(District Court, W. D. Washington, N. D.    August 16, 1923.)

No. 6352.

1. Shipping ☞69—No lien for master's wages.
    There is no lien in admiralty for master's wages.

2. Shipping ☞69—Master held entitled to lien for wages under Washington statute, where contract contemplated vessel was to proceed to Washington waters.
    One employed in California on monthly wages as master of vessel, by contract contemplating that it should proceed to Puget Sound and operate there and that credit was given to the ship, was entitled to lien for wages from time the vessel reached Washington waters under Rem. Com. Stat. Wash. § 1182, though Kerr's Cal. Code, § 3055, denies any lien.

3. Maritime liens ☞6—Persons furnishing money for purchase of boat held not owners so as to defeat their right to liens.
    Persons furnishing owner of vessel with money for its purchase under agreement that it was to be operated on shares, and the amount repaid out of profits, or, in case of sale, from proceeds of sale, *held* not owners pro hæc vice, so as to defeat their right to liens for the amount so loaned and for advances by them for marine supplies.

In Admiralty.   Libel by A. L. Van Valin against the gas screw Putnick, etc., in which the Marine Hardware Company and others intervened.   Decree classifying liens as stated in the opinion.

July, 1921, the libelant was employed by the owners to serve as seamen and master of the above vessel, lying in the harbor of San Pedro, Cal., to bring the vessel to Puget Sound, Wash., and operate the same in the waters of Puget Sound under the direction of Turck, the. owner, at the compensation of $150 per month.   The owner agreed to deposit the wages in the Merchants' National Bank bimonthly.

It appears in testimony that the libelant and the owner agreed that the wages should be a lien upon the vessel for all unpaid sums.   The vessel came to Puget Sound, sailing from San Pedro on the 27th of July. The venture was unprofitable, and. this wage was defaulted, and this libel followed.   Zanetich and Pecotich paid to Turck in 1919 $3,000 for the purchase of the vessel.   On the same day the First National Bank advanced $7,000 to Turck, the owner, and on March 8, 1921, a mortgage was given the bank upon the vessel.   For the $3,000 loan an agreement was given to Zanetich and Pecotich to fish the boat on shares for three years.   The $3,000 was to be repaid from the profits of the venture, or if the vessel was sold prior to that time, the money to be paid at the date of the sale; the profits in the fishing venture to be divided between the crew and the boat and nets, on share to each member of the crew, and four shares to the boat and nets.   There were nine men in the crew.   During the period of operation certain repairs, supplies, etc., were necessary.   The owner was unable to procure these and directed Zanetich to secure the same. He procured an engine, nets, and sundry items in 1920, paying $6,015, and sundry items of marine supplies for the voyage north amounting to $1,295.40.   The San Pedro Grocery & Supply Company, between the 11th day of September, 1920, and the 13th day of July, 1921, furnished material and supplies to the vessel in the sum of $958.82.   Ross Storage Battery Service on or about June 16, 1921, furnished supplies and equipment in the sum of $283.87, which claim is assigned to the San Pedro Grocery Company; that the Marine Hardware Company in June, 1920, furnished materials necessary for the navigation of the vessel of which $1,291.99 is un-

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

paid. West Coast Dairy Company, September and October, 1921, furnished supplies for which there was unpaid $25.70; Fishing Owners Marine Ways, October 1921, made sundry repairs, $193.10.

Some intervening libelants contend that the master is not entitled to a lien on his vessel under the rule in admiralty, and that the statute of California denies such lien. The libelant contends that his service contemplated service in waters without California jurisdiction, and that by special contract the service was performed upon the credit of the ship, and that the Washington state where the service was performed allows such lien. It is also contended that Zanetich and Pecotich's $3,000 advancement was not an advancement upon the credit of the ship in the sense of a bottomry advance, but was a rental or consideration paid for a lease of the ship, and that they bore the relation of the owners, and not entitled to a lien for this advancement; and that being such owners they were obliged to secure the materials, repairs, and supplies for which they paid and cannot now assert a lien for these advancements. While these interveners contend that the advancement was simply a loan, and that the repairs, supplies, etc., purchased and paid for, were paid upon request and at the direction of the owner, and all was done upon the credit of the ship. The San Pedro Grocery Company's claim, to the extent of the $500 loaned, it is contended, was a loan to Pecotich and not for the profit of the ship, and that the money was expended by Pecotich for his sole benefit. It is also contended that the supplies, materials, etc., furnished for the recent voyage should have precedence over previous claims, and that the mortgage of the bank has no status other than to receive the surplus after paying the liens which attached to the vessel.

Van Dyke & Thomas, of Seattle, Wash., for libelant.

G. E. Steiner, of Seattle, Wash., for Marine Hardware Co., San Pedro Gro. & Sup. Co., and Fishing Vessel Owners Marine Ways.

Allen, Martin & Wardall, of Seattle, Wash., for Zanetich and Pecotich.

NETERER, District Judge (after stating the facts as above). [1, 2] The solution of the claim of the libelant is not free from difficulty; the employment was arranged for and entered into in California; the service was to bring the vessel to Puget Sound and operate it in the water thereof. Libelant was registered as master. For master's wages admiralty affords no lien. Bene. on Admr. § 190. The California statute denies a lien for master's wages. Kerr's Cal. Code, § 3055. The Washington statute section 1182, R. C. S., gives a lien for master's wages. The testimony shows that the employment was accepted only upon condition that the owner, Turck, would deposit in the bank bimonthly the master's wages. The testimony of both master and owner is that the employment was predicated upon the credit of the ship. The vessel sailed immediately upon the employment, and on August 16th was at Astoria, Or., and was at Anacortes, Wash., some time prior to August 27th; the particular date not being established. As to the contention of the interveners that the master's lien on the ship being denied by the California statute, a lien in Washington could not be enforced, I am of opinion that the contract being entered into, having in view services in Washington, and no service being contemplated in California, other than such as would be necessary to bring the vessel to Washington, and the wage being a monthly wage, and the earning of the wage created the indebtedness, and thereupon and not until then can the lien attach, that in contemplation of law the con-

tract is extended to the place where the debt is created, where the work is done, and comes within the operation of the Washington statute for services rendered in Washington waters (Crawford v. Collins, 45 Barb. [N. Y.] 269), and this view I think lies within the sense of Hyde v. Goodnow, 3 N. Y. 266; and that the master's lien should be established for the wages earned within the waters of the state of Washington, which is established from August 27th. The claim of the San Pedro Grocery & Supply Company is established in the sum of $1,459.10; the Marine Hardware Company in the sum of $1,291.99. I think from the testimony in the case that the loan of $500 made by the San Pedro Grocery Company to Pecotich should be denied, and the Hardware Company did not waive its right of lien upon the vessel by taking a note from Zanetich, and all of the testimony warrants this conclusion.

[3] The following claims are also established: Fishing Vessel Owners, $196.10; the West Coast Dairy Company, $25.70; Zanetich and Pecotich for supplies, etc., in the amount of $1,299.40; and also the claim for $3,000 loaned for the purchase of the vessel, and $6,015, for engine, nets, and sundry items. There is no testimony that C. H. Wilson delivered provisions to the vessel. There is no basis for the contention that these interveners were owners pro hæc vice. All of the testimony shows that Turck was the owner, and these parties, ignorant fishermen, who made the advance for the purchase on the date that the First National Bank advanced the $7,000, this $7,000 being the same sum covered in the bank mortgage subsequently executed. After the purchase of the boat these interveners advanced upon the request of the owner, Turck, moneys for engine, nets, and sundry items, together with the marine supplies above stated for the repair, maintenance, and operation of the vessel in the prosecution of the common venture.

The classification of these liens is not free from difficulty, but the best solution I can reach is as follows: First, for wages from August 27th, libelant Van Valin. Second, Zanetich and Pecotich for marine supplies furnished for the trip north in the sum of $1,299.40; San Pedro Grocery Company on account of the Ross Storage Battery Service, $283.87; Fishing Vessel Owners Marine Ways, $196.85; West Coast Dairy, $25.10. Third, San Pedro Grocery Company $1,458.18; Marine Hardware Company $1,291.99. Fourth, Zanetich and Pecotich, $6,015. Fifth, First National Bank, $7,000; Zanetich and Pecotich, $3,000. That the funds in the registry of this court be applied to the satisfaction of these claims in the order of the classification, and if the funds are not sufficient to pay all of the claims in a particular class, that the funds be prorated to such respective claims; the costs first to be paid.