## WARNER, ADMINISTRATRIX, *v.* GOLTRA.

No. 4.  Submitted October 8, 1934.—Decided November 5, 1934.

*Messrs. Walter P. Armstrong, Samuel W. Fordyce, Henry J. Richardson,* and *C. Powell Fordyce* submitted for petitioner.

*Mr. Joseph T. Davis* submitted for respondent.

MR. JUSTICE CARDOZO delivered the opinion of the Court.

The master of a tug-boat met his death on the waters of the Ohio River through the negligence of a pilot employed to navigate the tug. The personal representative brought suit against the owner under the Merchant Marine Act of 1920, § 33 (41 Stat. 1007; 46 U. S. C. § 688) for the recovery of damages. The trial court sustained a demurrer to the complaint on the ground that a " master " is not a " seaman " within the meaning of the statute. The Supreme Court of Missouri affirmed the judgment for the owner. 334 Mo. 396; 67 S. W. (2d) 47. The case is here on certiorari. 292 U. S. 617.

The statute is set forth at large in opinions of this Court. *Panama R. Co.* v. *Johnson,* 264 U. S. 375, 383; *Cortes* v. *Baltimore Insular Line,* 287 U. S. 367, 371. It gives to " any seaman " injured in the course of his employment, and in case of the death of such seaman to his personal representatives, a cause of action similar to that given by the statutes of the United States to railway employees. In the enforcement of the statute a policy of liberal construction announced at the beginning has been steadily maintained. Early in the history of the act, the question came up whether it gave a remedy to stevedores. We decided that it did. " It is true that for most purposes, as the word is commonly used, stevedores are not ' seamen.' " *International Stevedoring Co.* v. *Haverty,* 272 U. S. 50, 52. None the less, verbal niceties were bent to the overmastering purpose of the act to give protection to workers injured upon ships. " Words," we said, " are

flexible." *International Stevedoring Co.* v. *Haverty,*
*supra,* at p. 52. Later decisions of this Court have been
conceived in a like spirit (*Jamison* v. *Encarnacion,* 281 U.
S. 635; *Uravic* v. *F. Jarka Co.,* 282 U. S. 234; *Cortes* v.
*Baltimore Insular Line, supra,* at p. 375), and other courts
have followed suit.[1]

The problem for solution here stands out upon this
background.

There are contexts in which the word seaman is held
to exclude the master or even any officer. See, e. g., R. S.
§ 4530, as amended by § 31 of the Merchant Marine Act
of 1920 (46 U. S. C. § 597); also 46 U. S. C. §§ 564, 568,
570, 592, 594, 597, 658, reënacting R. S. §§ 4511, 4515,
4517, 4525, 4527, 4530, 4561 as from time to time
amended. There are other contexts in which it takes
them in. 28 U. S. C. § 837; also R. S. § 2174; *In re
Scott,* 250 Fed. 647, 648; *The Balsa,* 10 F. (2d) 408; *The
Burns Bros., No. 31,* 29 F. (2d) 855. The respondent
points to statutes that develop the antithesis between a
seaman and those over him. See citations, *supra.* They
do not carry us very far, any more than the contrast that
exists for many purposes between a seaman and a steve-
dore. In a broad sense, a seaman is a mariner of any
degree, one who lives his life upon the sea. It is enough
that what he does affects " the operation and welfare of
the ship when she is upon a voyage." *The Buena Ven-
tura,* 243 Fed. 797, 799, where a wireless operator was
brought within the term. In a narrow sense the term is

---

[1] See *Grimberg* v. *Admiral Oriental S. S. Line,* 300 Fed. 619; *The
Sea Lark,* 14 F. (2d) 201; *Kuhlman* v. *W. & A. Fletcher Co.,* 20 F.
(2d) 465; *Rogosich* v. *Union Dry Dock & Repair Co.,* 67 F. (2d)
377; and cf. *The Buena Ventura,* 243 Fed. 797, 799: " The word
' seaman ' undoubtedly once meant a person who could ' hand, reef
and steer,' a mariner in the true sense of the word. But as the
necessities of ships increased, so the word ' seaman ' enlarged its
meaning."

limited to one who is an ordinary seaman and nothing more, a seaman as opposed to the master or an officer. One can find a like range of variation in the use of the word " crew." " It is sometimes used to comprehend all persons composing the ship's company, including the master; sometimes to comprehend the officers and common seamen, excluding the master; and sometimes to comprehend the common seamen only, excluding the master and officers." *United States* v. *Winn,* 3 Sumn. 209, 213, 214, Fed. Cas. No. 16740 (Story, J.); cf. *The Buena Ventura, supra,* 799 (Hough, J.); *The Bound Brook,* 146 Fed. 160, 164; *United States* v. *Huff,* 13 Fed. 630. What concerns us here and now is not the scope of the class of seamen at other times and in other contexts. Our concern is to define the meaning for the purpose of a particular statute which must be read in the light of the mischief to be corrected and the end to be attained. Congress knew that men employed upon a ship were without a remedy in damages for negligence beyond their cure and maintenance, unless the injury was a consequence of the unseaworthiness of the ship or a defect in her equipment. *Chelentis* v. *Luckenbach S. S. Co.,* 247 U. S. 372, 384; *Cortes* v. *Baltimore Insular Line, supra.* This restriction upon remedies was applicable to ordinary seamen, but applicable also to officers and even to the master. *The George,* 1 Sumn. 151, Fed. Cas. No. 5,329 (Story, J.); *The Balsa, supra.* " It is said, that the allowance by the maritime law belongs to the seamen only, and cannot be claimed by the master of the ship. . . . No authority is cited for this position; and I am not aware that any exists." Story, J., in *The George, supra,* at p. 155. Cf. the rule in Great Britain under the Merchant Shipping Act, 1906 (6 Edw. 7, No. 48, § 34). The old measure of recovery was the same for all aboard, the highest and the lowest. The new measure was not designed to narrow the protected class while broadening the damages. We

stick too closely to the letter if we say that Congress had the will to give damages for wounds or death to the crew at large or their dependents and to leave the master and his dependents out. An ancient evil was to be uprooted, and uprooted altogether. It was not to be left with fibres still clinging to the soil.

The purpose of the lawmakers, clear enough, we believe, upon the surface of the act, takes on an added clearness when the act is viewed in the setting of its history. Section 33 of the Merchant Marine Act of 1920 is derived from § 20 of the Act of 1915. 38 Stat. 1185. The parent section was aimed at the fellow-servant rule in its application to torts upon navigable waters. *Chelentis* v. *Luckenbach S. S. Co., supra.* It provided that " in any suit to recover damages for any injury sustained on board vessel or in its service seamen having command shall not be held to be fellow-servants with those under their authority." Masters were thus recognized as within the genus seamen, though they were seamen having command. The decision of this Court in the *Chelentis* case gave warning that the change, if any, thus effected, did not avail to increase the damages beyond the cost of cure and maintenance. Thus warned, the lawmakers amended § 20 of the Act of 1915 by substituting § 33 of the Act of 1920. We cannot believe that in this process of amendment the word seamen lost the broad meaning that it had in the law to be amended, and was narrowed by the exclusion of a particular species of seamen, i. e., seamen having command. The change is too sudden to be accepted as intended unless unmistakably declared.

The scheme of legislation becomes symmetrical and consistent when the Merchant Marine Act of 1920 is read in the light of another act *in pari materia,* the Longshoremen's & Harbor Workers' Compensation Act (33 U. S. C. § 901 *et seq.*) adopted in 1927. This act expressly excludes from its " coverage " a " master or member of a

crew of any vessel." § 903. The exclusion was at the request of seamen who notified the committee in charge that they preferred the remedy for damages under the act of 1920 to the benefits that would be theirs under a system of workmen's compensation. See Hearings before a Subcommittee of the Senate Committee on the Judiciary, 69th Cong., 1st Sess., on S. 3170, at p. 17; Cong. Rec., 69th Cong., 2d Sess., vol. 68, part 5 p. 5908; *Nogueira* v. *N. Y., N. H. & H. R. Co.*, 281 U. S. 128, 134, 136. The bill was accordingly amended in its progress through the House by declaring the exception. There can be little doubt that Congress did this in the belief that under the statutes then in force master and crew alike were already adequately protected in case of injury or death. The belief had a sound foundation in the act of 1920. Cf. *Nogueira* v. *N. Y., N. H. & H. R. Co., supra*, at p. 134.

In reaching the opposite conclusion, the Supreme Court of Missouri rested its opinion on § 713 of Title 46, c. 18 of the U. S. Code, which for the purpose of construction defines a master and a seaman as well as other terms.[2] With a few verbal changes § 713 is a reënactment of § 65[3] of the Act of June 7, 1872 (17 Stat. 277), which was

---

[2] " In the construction of this chapter, every person having the command of any vessel belonging to any citizen of the United States shall be deemed to be the 'master' thereof; and every person (apprentices excepted) who shall be employed or engaged to serve in any capacity on board the same shall be deemed and taken to be a 'seaman'; and the term 'vessel' shall be understood to comprehend every description of vessel navigating on any sea or channel, lake or river, to which the provisions of this chapter may be applicable, and the term 'owner' shall be taken and understood to comprehend all the several persons, if more than one, to whom the vessel shall belong."

[3] " That to avoid doubt in the construction of this act, every person having the command of any ship belonging to any citizen of the United States shall, within the meaning and for the purposes of this

then known as § 4612 of the Revised Statutes. In the compilation of the Code some of the provisions for the protection of seamen contained in the Act of 1872 were placed in Title 46, which relates to shipping, and particularly in Chapter 18 of that title, which relates to "Merchant Seamen." They had previously been re-enacted, as parts of the Revised Statutes, along with § 65. The Acts of 1915 and 1920 were placed in the same chapter and title, and were thus brought into contiguity with the sections carried over from the Act of 1872. Very clearly the change of location did not work a change of meaning. The rule of construction laid down in § 713 must be confined to those sections of the chapter which were contained in the Act of 1872, or in the equivalent provisions of the Revised Statutes, before the Code had rearranged them. The compilers of the Code were not empowered by Congress to amend existing law, and doubtless had no thought of doing so. As to that the command of Congress is too clear to be misread. 44 Stat. Part I, 1.[4] To this it must be added that § 713, even in its relation to the sections fairly within its range, is "directed to extension not to restriction." *Uravic* v. *Jarka Co., supra,* at

---

act, be deemed and taken to be the 'master' of such ship; and that every person (apprentices excepted) who shall be employed or engaged to serve in any capacity on board the same, shall be deemed and taken to be a 'seaman' within the meaning and for the purposes of this act. . . ."

[4] "The matter set forth in the Code, . . . shall establish prima facie the laws of the United States, general and permanent in their nature, in force on the 7th day of December, 1925; but nothing in this act shall be construed as repealing or amending any such law, or as enacting as new law any matter contained in the Code. In case of any inconsistency arising through omission or otherwise between the provisions of any section of this Code, and the corresponding portion of legislation heretofore enacted, effect shall be given for all purposes whatsoever to such enactments."

p. 239.   It means that " for the purposes of the chapter ' seamen ' shall include persons who otherwise might be deemed not to be seamen." It puts into the class some that might otherwise be excluded; it does not take any ·one out who would otherwise be there.

The case for the respondent reduces itself to this, that by express or implied antithesis the word seaman is used in many statutes to designate a class of mariners exclusive of the master. It is also true, however, that in these same statutes a seaman excludes a stevedore. A goodly number of the statutes where the antithesis is sharpest lay a duty upon the master to be performed for the seamen under him. In laws so framed, there is no room for construction. A goodly number in addition give a remedy to seamen for wages wrongfully withheld, or define terms of payment that agreement may not vary. In respect of dealings of that order, the maritime law by inveterate tradition has made the ordinary seaman a member of a favored class. He is a " ward of the admiralty," often ignorant and helpless, and so in need of protection against himself as well as others. The master, on the other hand, is able in most instances to drive a bargain for himself, and then when the bargain is made, to stand upon his rights. Discrimination may thus be rational in respect of remedies for wages. *The Bethulia,* 200 Fed. 876; *The Putnick,* 291 Fed. 902. It is neither rational nor just if extended to remedies for bodily wounds. At such times master and seaman are approximately equal. Congress did not mean that the master, any more than the seaman, should be left without a remedy if wounded in his body, or that his dependents were to be helpless if the wounds resulted in his death.

The judgment is reversed, and the cause remanded to the Supreme Court of Missouri for further proceedings not inconsistent with this opinion.

*Reversed.*