## THE WESTERN WORLD.

### MALLEY v. HUPPER.
### No. 15572.

District Court, E. D. New York.
Jan. 31, 1940.

Frederick R. Graves, of New York City, for libellant.

Harold M. Kennedy, U. S. Atty., of Brooklyn, N. Y., and William E. Collins, Sp. Asst. to U. S. Atty., of New York City (Anthony Blasi, of New York City, of counsel), for respondent.

GALSTON, District Judge.

The libellant alleges that in September 1938, while the vessel Western World was en route to Rio de Janeiro, he was directed by a superior officer to assist members of the crew in dismantling a swimming pool which had been erected on the deck, and in consequence of the negligence of the respondent he sustained personal injuries.

The answer denies negligence and alleges that the libellant's injuries were caused solely by his own negligence and that more particularly he was aboard respondent's vessel unlawfully, and that the officers of the respondent's vessel had no knowledge of the libellant's presence until the vessel was well under way and at sea when he was discovered as a stowaway. It is alleged that the respondent owed the libellant no duty to protect him from injury to his person except such as would result from wilful or wanton misconduct or negligence. It is also alleged that whatever work libellant performed was voluntary and was rendered in consideration of the food and lodging he received aboard respondent's vessel.

The libellant, a longshoreman, testified that he boarded the vessel in Brooklyn in order to look for another longshoreman. He had had "some drinks," lay on the hatch, and fell asleep. When he awoke the boat was at sea. He reported to the master at arms and then to the captain and was ordered to the brig and remained there from five o'clock in the afternoon until the next morning. Then he was assigned to the forecastle and told to clean up. Thereafter he slept in the crew's quarters and was under the supervision of the boatswain. He worked eight hours per day and did the same work as the rest of the crew, performing miscellaneous duties.

The happening of the accident is most clearly described by McCormack, a member of the crew. It appears that on September 8, 1938, at about 2 o'clock in the afternoon, while the vessel was about one day distant from Rio de Janeiro on her southern voyage, members of the crew, including himself and the libellant, were engaged in taking down a swimming pool in the vicinity of No. 7 hatch, aft, and on the port side. They were ordered to pick up a beam about 15 feet long and to store it between No. 7 and No. 8 hatches, where all the other beams were being stored. Malley was on the starboard with his back towards the starboard side of the ship and facing McCormack on the port side. The other men were holding up the beam along the sides thereof. In carrying the beam end towards the starboard side Malley had to walk backwards. McCormack, holding the beam on the port side, was walking forward, and says: "when I pushed the beam a little too hard towards Malley and he lost his balance and the beam came down on his left ankle. Malley appeared to be hurt very much and had to catch his foot out from under the beam. He hopped around quite a bit and yelled that his foot hurt him. His left foot started to swell considerably."

The legal liability involves a rather unusual situation. It is contended that under the general maritime law when the libellant was put to work under the captain's orders in the service of the ship he became a seaman and member of the crew of the S.S. Western World, despite the fact that he was a stowaway. The respondent likewise urges that the libellant was a stowaway but that as such he is not entitled to recover under the Jones Act, 41 Stat. 988, as a seaman.

Under the strict definition of stowaway it may very well be doubted whether the libellant was a stowaway, for a stowaway is one who conceals himself aboard an outgoing vessel for the purpose of obtaining free passage. 60 Corpus Juris, 130; United States ex rel. Candreva v. Smith, 7 Cir., 27 F.2d 642.

But the record does not show that the libellant was endeavoring to steal a ride. So far as the record discloses he boarded the

vessel not to take the voyage but in search of an acquaintance. Clearly he was a trespasser and consequently it may be said that he was on board at his own peril. Then the master gave him the choice of remaining in the brig or of working as a member of the deck crew. In a sense, from that time on he became a member of the crew. The libellant cites many cases which he urges as authority for the contention that he is entitled to the rights conferred on him by the Jones Act; but in none of these cases—The Bound Brook, D.C., 146 F. 160; Warner v. Goltra, 293 U.S. 155, 55 S.Ct. 46, 79 L.Ed. 254; Seneca Washed Gravel Corp. v. McManigal (Viking), 2 Cir., 65 F.2d 779, 1933 A.M.C. 1387; Taylor v. McManigal (Watkin's Case) 6 Cir., 89 F.2d 583, 1937 A.M.C. 722; James W. Follette, 1934 A.M.C. 1525; The Buena Ventura, D.C., 243 F. 797; The Falco, 2 Cir., 20 F.2d 362—was it held that a stowaway or a trespasser, even though put at work as a result of the choice given him by the master of the vessel, was a seaman within the meaning of 46 U.S.C., Sec. 688, 46 U.S.C.A. § 688. In Warner v. Goltra, supra, the question for decision was whether the term "any seaman" injured in the course of his employment includes the master of the vessel; but despite the liberality accorded the term and the reference to a growing denotation, Justice Cardozo observes [293 U.S. 155, 55 S.Ct. 48, 79 L. Ed. 254]: "What concerns us here and now is not the scope of the class of seamen at any other times and in other contexts. Our concern is to define the meaning for the purpose of a particular statute which must be read in the light of the mischief to be corrected and the end to be attained. Congress knew that men employed upon a ship were without a remedy in damages for negligence beyond their cure and maintenance, unless the injury was a consequence of the unworthiness of the ship or a defect in her equipment."

But there is no suggestion in this opinion, wherein all relevant authorities are so carefully reviewed, to warrant the further extension of the Act to stowaways or trespassers. Thus the Jones Act is not applicable. And the general maritime law, as affecting the rights of seamen prior to the enactment of the Jones Act, would not warrant recovery here beyond medical care and maintenance. Judge Addison Brown, in The City of Alexandria, D.C., 17 F. 390, 392, thus states the law: "Those who engage in a common employment take upon themselves all the natural and ordinary risks and perils incident to the performance of their duties. Among these are the perils arising from the carelessness or negligence of others who are engaged in the same employment; and it constitutes no exception to the rule that the several persons employed are not in equal station or authority, or that one servant is injured through the negligence of another, who is his superior in station, to whom he owes obedience. Hough v. Texas & P. Ry. Co., 100 U.S. 213 [25 L.Ed. 612]; Wilson v. Merry, L.R. 1 Sc. & Div.App. 326; Allen v. New Gas Co., 1 Exch.Div. 251; Malone v. Hathaway, 64 N.Y. 5, 9 [21 Am.Rep. 573]; Fuller v. Jewett, 80 N.Y. 46 [36 Am.Rep. 575]."

So Malley having sustained an injury because of the negligence of a fellow worker can at most recover for cure and maintenance. He testified that following the accident he was taken to the ship's hospital and given first aid; that the next day the ship arrived in Brazil and he was sent to the office of a doctor there; that the ankle was put in a cast and then he was returned to New York on another vessel. On arrival in New York he went to his home in Brooklyn and was then taken to the Kings County Hospital where he went a number of times and at which place the cast was removed. He said it was four or five months before he could go to work again. He testified that he always paid his board and lodging when he worked and gave his mother, for living expenses, about two dollars a day.

There was no proof of any expenditure for medical service and on the finding that the respondent would be liable for cure and maintenance for a reasonable time the libellant may be awarded the sum of $100.

Submit findings of fact and conclusions of law in conformity with the foregoing opinion.