FRANK BRINKMAN, Plaintiff, *v.* ERIE & ST. LAWRENCE CORPORATION, Defendant.

Municipal Court of New York, Borough of Manhattan, February 3, 1944.

*Dow & Symmers* for defendant.

*Silliman, Gay & Behrens* for plaintiff.

MARKS, J. Defendant moves to dismiss that portion of plaintiff's claim which seeks to recover two days' pay for each and every day from November 15, 1943, to December 8, 1943, in accordance with the provisions of section 596 of title 46 of the United States Code (U. S. Rev. Stat., § 4529, as amd.).

The complaint alleges and the answer admits that plaintiff was master of a vessel owned by defendant. The question involved on this motion is whether a master is a seaman under section 596 of chapter 18 of title 46 of the United States Code. The section relied on by plaintiff in support of his claim reads as follows: " § 596. *Time for Payment.* The master or owner of any vessel making coasting voyages shall pay to every seaman his wages within two days after the termination of the agreement under which he was shipped, or at the time such seaman is discharged, whichever first happens; and in case of vessels making foreign voyages, or from a port on the Atlantic to a port on the Pacific, or vice versa, within twenty-four hours after the cargo has been discharged, or within four days after the seaman has been discharged, whichever first happens; and in all cases the seaman shall be entitled to be paid at the time of his discharge on account of wages a sum equal to one-third part of the balance due him. Every master or owner who refuses or neglects to make payment in the manner hereinbefore mentioned without sufficient cause shall pay to the seaman a sum equal to two days' pay for each and every day during which payment is delayed beyond the respective periods, which sum shall be recoverable as wages in any claim made before the court; but this section shall not apply to masters or owners of any vessel the seamen of which are entitled to share in the profits of the cruise or voyage. * * * (R. S. § 4529; Dec. 21, 1898, ch. 28, §§ 4, 26, 30 Stat. 756, 764; Mar. 4, 1915, ch. 153, § 3, 38 Stat. 1164.) "

There seems to be no case directly in point construing this section as to whether or not a master is a seaman. The intent of Congress in passing this legislation should be controlling. The definitions applicable to the foregoing section are found in section 713, also a part of chapter 18 of title 46 of the United States Code. Section 713 provides: " *Definitions, schedule, and tables.* In the construction of sections 541–543, 545–549, 561, 562, 564–571, 574–578, 591–597, 600, 602–605, 621–628, 641–643, 644, 645, 651–660, 661–669, 674–679, 682–685, 701–710, and 711–713 of this title, every person having the command of any vessel belonging to any citizen of the United States shall be deemed to be the ' master ' thereof; and every person

(apprentices excepted) who shall be employed or engaged to serve in any capacity on board the same shall be deemed and taken to be a ' seaman '; and the term ' vessel ' shall be understood to comprehend every description of vessel navigating on any sea or channel, lake or river, to which the provisions of such sections may be applicable, and the term ' owner ' shall be taken and understood to comprehend all the several persons, if more than one, to whom the vessel shall belong. * * * (R. S. § 4612; Dec. 21, 1898, ch. 28, §§ 23, 26, 30 Stat. 762, 764; Mar. 4, 1915, ch. 153, § 10, 38 Stat. 1168.) ''

Considering section 713 in connection with another section of chapter 18, the Supreme Court of the United States in the case of *Blackton* v. *Gordon* (303 U. S. 91 [1938]) stated (pp. 93–94): '' Section 65 of the Act of 1872 became § 4612 of the Revised Statutes and, with immaterial amendments, now is § 713 of Title 46 of the United States Code. Various other provisions of the Act of 1872 embodied in the Revised Statutes, either in their original form or as amended by the Act of March 4, 1915, and by the Merchant Marine Act of [June 5] 1920, now appear, with provisions of other statutes, as sections of Title 46 of the Code. In compiling it the original language of § 65 of the Act of 1872 ' To avoid doubt in the construction of *this act*,' was, in § 713 of Title 46, changed to read: ' In the construction of *this chapter*.' The change in phraseology has given rise to the impression that the definitions found in § 713 apply indifferently to. the various statutes affecting merchant shipping. To avoid confusion in determining the applicability of the definitions contained in that section, it is necessary to trace to their origin the substantive sections to which it may be deemed to refer, and to construe them in the light of the evident intent of Congress in the use of the word ' seaman ' in the original Act. Since the pertinent provision in § 12 of the Act of 1915 here under consideration and the definitions of § 713 of Title 46 of the Code were commonly derived from the Act of 1872 and have not been materially changed, they must be read in collocation, and when this is done, the intent of Congress to exclude masters from the exemption accorded seamen is plain.''

Sections 713 and 596 are both derived from the Act of June 7, 1872 (17 U. S. Stat. 277, 269). Section 601 of title 46 of the United States Code, referred to in the above opinion, was also derived from the Act of June 7, 1872.

Throughout the history of section 596 the reference to " master " on one hand, and " seaman " on the other, has always been separate and distinct. In *Blackton* v. *Gordon* (303 U. S. 71, 92, *supra*), Mr. Justice ROBERTS said, in connection with the question of wages under section 65, now section 713 of title 46 of the United States Code: " Scrutiny of the Act as a whole leads to the view that in all matters affecting wages seamen were treated as a class which excluded masters   *   *   *.''

This distinction is further illustrated by the language used by the United States Supreme Court in *Warner* v. *Goltra* (293 U. S. 155 [1934]), where the court said at page 162: " A goodly number of the statutes where the antithesis is sharpest lay a duty upon the master to be performed for the seamen under him. In laws so framed, there is no room for construction. A goodly number in addition give a remedy to seamen for wages wrongfully withheld, or define terms of payment that agreement may not vary. In respect of dealings of that order, the maritime law by inveterate tradition has made the ordinary seaman a member of a favored class. He is a ' ward of the admiralty,' often ignorant and helpless, and so in need of protection against himself as well as others. The master, on the other hand, is able in most instances to drive a bargain for himself, and then when the bargain is made, to stand upon his rights. Discrimination may thus be rational in respect of remedies for wages. *The Bethulia*, 200 Fed. 876; *The Putnick*, 291 Fed. 902.''

The class of cases which apparently distinguished the cases cited to show a different intent on the part of Congress are those which involve a different section of title 46 of the United States Code, namely, section 688. The purpose of Congress in section 688 was to make available to seamen remedies and rights enacted for the benefit of railroad employees which they otherwise did not have. Section 688 was not included in the Act of 1872 along with the earlier enactment of sections 596 and 713. It first appeared as section 20 in the Act of March 4, 1915 (38 U. S. Stat. 1185) and was amended in 1920 and became section 33 of the Merchant Marine Act of 1920 (41 U. S. Stat. 1007). It is commonly known as the " Jones " Act. In the *Warner* v. *Goltra* case (*supra*) the court held that the word " seaman " as used in that statute included a master and that it was the intent of Congress to include a master, when the court said, at page 162: " Congress did not mean that the master, any more than the seaman, should be left without a remedy if wounded in his body, or that his dependents were to

be helpless if the wounds resulted in his death.'' In the same case the court, referring to section 713, said at page 161: '' The Acts of 1915 and 1920 [Jones Act] were placed in the same chapter and title [chapter 18, title 46] and were thus brought into contiguity with the sections carried over from the Act of 1872. Very clearly the change of location did not work a change of meaning. The rule of construction laid down in § 713 must be confined to those sections of the chapter which were contained in the Act of 1872, or in the equivalent provisions of the Revised Statutes, before the Code had rearranged them. The compilers of the Code were not empowered by Congress to amend existing law, and doubtless had no thought of doing so.''

Section 601 of title 46 of the United States Code, passed on in the *Blackton* case (303 U. S. 91, *supra*), held that a master was not a seaman whose wages were exempt from attachment. Sections 603 and 604 of title 46 of the United States Code, previously passed upon by the courts, differentiate between a master and a seaman. It is also settled in connection with these foregoing sections that a master has no lien on the vessel for wages claimed due to him. (See *Steam-boat Orleans* v. *Phœbus*, 11 Pet. [U. S.] 175.)

Courts have given deference to the intent of Congress to broaden the meaning of the word '' seaman '' in particular statutes. The meaning cannot be removed from one statute and embossed on a construction of another statute. In *South Chicago Co.* v. *Bassett* (309 U. S. 251) Mr. Chief Justice Hughes, in laying down the test to be applied in the particular act before the court, stated (pp. 259–260): '' Recently, in considering the application of the Jones Act to ' any seaman,' we adverted to the ' range of variation ' in the use of the word ' crew,' and it was again emphasized that what concerned us in that case, which had relation to the status of a ' master,' was ' not the scope of the class of seaman at other times and in other contexts.' We said that our concern there was ' to define the meaning for the purpose of a particular statute which must be read in the light of the mischief to be corrected and the end to be attained.' (*Warner* v. *Goldtra*, 293 U. S. 155, 158.) That is our concern here in construing this particular statute — the Longshoremen's and Harbor Workers' Compensation Act [U. S. Code, tit. 33, § 901 *et seq.*] — with appropriate regard to its distinctive aim. We find little aid in considering the use of the term ' crew ' in other statutes having other purposes. This Act, as we have seen, was to provide compensation for a class of employees at

work on a vessel in navigable waters who, although they might be classed as seamen (*International Stevedoring Co.* v. *Haverty*, 272 U. S. 50, *supra*), were still regarded as distinct from members of a ' crew '. They were persons serving on vessels, to be sure, but their service was that of laborers, of the sort performed by longshoremen and harbor workers and thus distinguished from those employees on the vessel who are naturally and primarily on board to aid in her navigation."

It is therefore clear that it was the intent of Congress that the words " master " and " seaman " contained in section 596 should be mutually exclusive of one another.

For these reasons the motion to strike out the second cause of action claiming two days' pay for wages from November 15, 1943, to December 8, 1943, is granted.