## GERMAN v. CARNEGIE-ILLINOIS STEEL CORPORATION.

### Civil Action No. 6297.

District Court, W. D. Pennsylvania.
Jan. 23, 1948.

Hymen Schlesinger, of Pittsburgh, Pa., for plaintiff.

Ira R. Hill, of Pittsburgh, Pa., for defendant.

McVICAR, District Judge.

Plaintiff, a seaman, in April, 1944, was employed by defendant in the position of a

striker engineer. While in said employment, he was engaged in oiling and greasing engines, and while so doing he fell from a box upon which oil and grease had accumulated and injured his back.

He brought an action in this Court under the Admiralty and Maritime laws to recover for maintenance and cure and for damages by reason of the unseaworthiness of the vessel, also under the Jones Act, 46 U.S.C.A. § 688, by reason of negligence. These three actions were tried together before a jury which rendered a verdict in his favor in the amount of $4011.

The action is now before us on defendant's motions, one, for a new trial, the other for judgment in its favor notwithstanding the verdict.

At the trial, defendant offered in evidence a release. In the release, plaintiff released defendant from all rights to recovery under the aforementioned rights of action, namely, for maintenance and cure, damages by reason of the unseaworthiness of the vessel, and for negligence under the Jones Act.

At the argument of the aforesaid motions, defendant limited his rights on both to the contention that the Court should have given binding instructions for a verdict in favor of the defendant on each of said actions for the reason that plaintiff voluntarily executed the aforesaid release to defendant.

In Garrett v. Moore-McCormack Co., 317 U.S. 239, 63 S.Ct. 246, 251, 87 L.Ed. 239, the Supreme Court, in an opinion by Justice Black, said:

"The language of Justice Story, sitting on Circuit in 1823, described the solicitude with which admiralty has traditionally viewed seamen's contracts:

" 'They are emphatically the wards of the admiralty; and though not technically incapable of entering into a valid contract, they are treated in the same manner, as courts of equity are accustomed to treat young heirs, dealing with their expectancies, wards with their guardians, and cestuis que trust with their trustees. * * * If there is any undue inequality in the terms, any disproportion in the bargain, any sacrifice of rights on one side, which

are not compensated by extraordinary benefits on the other, the judicial interpretation of the transaction, is that the bargain is unjust and unreasonable, that advantage has been taken of the situation of the weaker party, and that pro tanto the bargain ought to be set aside as inequitable. * * *'

"The analogy suggested by Justice Story in the paragraph quoted above between seamen's contracts and those of fiduciaries and beneficiaries remains, under the prevailing rule treating seamen as wards of admiralty, a close one. Whether the transaction under consideration is a contract, sale, or gift between guardian and ward or between trustee and cestui, the burden of proving its validity is on the fiduciary. He must affirmatively show that no advantage has been taken; and his burden is particularly heavy where there has been inadequacy of consideration.

"The wardship theory has, as was recognized by the courts below, marked consequence on the treatment given seamen's releases. Such releases are subject to careful scrutiny. 'One who claims that a seaman has signed away his rights to what in law is due him must be prepared to take the burden of sustaining the release as fairly made with and fully comprehended by the seaman.' Harmon v. United States, 5 Cir., 59 F.2d 372, 373. We hold, therefore, that the burden is upon one who sets up a seaman's release to show that it was executed freely, without deception or coercion, and that it was made by the seaman with full understanding of his rights. The adequacy of the consideration and the nature of the medical and legal advice available to the seaman at the time of signing the release are relevant to an appraisal of this understanding.

"This general admiralty rule applies not only to actions for maintenance and cure but also to actions under Section 33 of the Merchant Marine Act. That law is to be liberally construed to carry out its full purpose, which was to enlarge admiralty's protection to its wards. Warner v. Goltra, 293 U.S. 155, 156, 162, 55 S.Ct. 46, 49, 79 L.Ed. 254; The Arizona [v. Anelich], 298 U.S. 110, 123, 56 S.Ct. 707, 711, 80 L.Ed. 1075."

The accident, in this case, happened at or about April 15, 1944. The release was executed September 20, 1946. No payments were made to the plaintiff for maintenance and cure, or by reason of his claims, for damages prior to the execution of the release. He testified that he was financially embarrassed and did not feel physically well, that this was the reason for the execution of the release. His attorney advised him to not execute the release.

The verdict of the jury rendered November 25, 1947, disclosed that they were of the opinion that he was entitled to $4011, after giving credit for the amount paid to him by defendant by reason of the release in the sum of $2500.

There was no evidence that the plaintiff understood what he was entitled to recover for maintenance and cure, or by reason of his claims under the Jones Act, or by reason of the unseaworthiness of the vessel.

Plaintiff, being a ward of the Court, and the burden resting upon the defendant to show that the release was executed freely, without coercion, and that it was made by the plaintiff with a full understanding of his rights, the question whether the release was so executed by the plaintiff was a question of fact for the jury.

The motions of defendant should be refused.