[No. 35022.   *En Banc.*   December 22, 1960.]

JOSEPH PAROSA, *Individually and as Representative of the Signers of the Petitions for the Incorporation of the Town of Tidehaven City, Appellant,* v. THE CITY OF TACOMA *et al., Respondents.*

THE PORT OF TACOMA, *Respondent,* v. HARRY SPRINKER *et al., Defendants,* JOSEPH PAROSA, *Individually and as Representative of the Signers of the Petitions for the Incorporation of the Town of Tidehaven City, Appellant.*[1]

*Ray Graves* (of *Graves & Garnes*), for appellant.

*Marshall McCormick* and *Robert R. Hamilton,* for respondent city of Tacoma.

*Binns, Jacques, Petrich & Garlington,* for respondent Port of Tacoma.

[1]Reported in 357 P. (2d) 873.

FOSTER, J.—This appeal brings here for review two actions which were consolidated for trial, both involving an attempted incorporation of a fourth-class town.[2]

Appellant Parosa and others petitioned to incorporate a fourth-class town containing two large tracts of land connected by a very narrow strip. The easterly tract comprises one fourth of the area and includes all but forty-three of the residents of the projected town. The other tract contains over one thousand acres and is owned by the Port of Tacoma which has comprehensive long-range plans for the development of its property for industrial purposes. The port objects to the proposed incorporation because of interference with its plans for industrial development.

After the filing of Parosa's incorporation petition, the port petitioned the city of Tacoma for the annexation of a thirty-acre strip bisecting the two tracts included in the incorporation petition. Thereafter, the city of Tacoma annexed the thirty-acre strip by ordinance.

Parosa, individually and as a class representative, sued to enjoin the annexation of the thirty-acre strip on two grounds: (1) That there was no authority of law for the port to make such an annexation petition, and (2) that the incorporation petition was entitled to priority because it was filed with the board of county commissioners before the Port of Tacoma filed its petition for annexation of the thirty-acre strip.

Thereafter, the Port of Tacoma, pursuant to the Uniform Declaratory Judgments Act (RCW chapter 7.24), instituted an action seeking a judicial declaration of the meaning of RCW 35.27.020 and to enjoin the Pierce County Board of Commissioners from considering the appellant's petition to incorporate because the area included more than twenty acres of unplatted land belonging to the Port of Tacoma without its consent. Appellant Parosa intervened.

Judgment was entered dismissing Parosa's action to enjoin the city of Tacoma and Port of Tacoma from proceed-

[2]The controversy was here in *Port of Tacoma v. Parosa,* 52 Wn. (2d) 181, 324 P. (2d) 438.

ing with the annexation. In the port's declaratory judgment action, the court held that the statute applied to both incorporation and annexation by a fourth-class town of more than twenty acres of unplatted land belonging to one person without the owner's consent, and enjoined the incorporation proceeding. Parosa appeals from both judgments.

Laws of 1889-90, chapter 7, § 15, p. 141, prohibits the original *incorporation* or *annexation* by a fourth-class town of more than twenty acres of unplatted land belonging to one person without the owner's consent.

Laws of 1889-90, chapter 7, § 15, p. 141, is as follows:

"Municipal corporations now or hereafter organized are bodies politic and corporate under the name of the city of ....................., or the town of ....................., as the case may be, and as such may sue and be sued, contract or be contracted with, acquire, hold, possess and dispose of property, subject to the restrictions contained in other chapters of this act, having a common seal, and change or alter the same at pleasure, and exercise such other powers, and have such other privileges as are conferred by this act: *Provided,* That not more than one square mile in area shall be included within the corporate limits of municipal corporations of the fourth class, nor shall more than twenty acres of unplatted land belonging to any one person be taken within the corporate limits of municipal corporations of the fourth class without the consent of the owner of such unplatted land."

*State ex rel. Cummings v. Johnson,* 105 Wash. 93, 177 Pac. 699, specifically held that this statute applied both to original incorporation and annexation. This the appellant frankly concedes, but contends that the law has been changed and that under Laws of 1951, chapter 109, p. 270, RCW 35.27.020, the area limitation of twenty acres applies only to annexation and not to original incorporation.

The history of the Revised Code of Washington, so far as material, may be thus summarized:

The original code committee, created by Laws of 1941, chapter 149, p. 418, consisted of the State Law Librarian, the law librarian of the University of Washington, and the executive secretary of the judicial council. By § 2 of that

act,[3] the committee was directed to adopt a complete recompilation of the statute law of the state, but was not endowed with power to change the law.[4]

Two mimeographed volumes, containing the work product of the committee's employed staff,[5] were deposited in the office of the secretary of state, but the text thereof was never presented to the legislature. The committee itself never approved it. One member alone recommended the adoption of that compilation as a *prima facie* code. A majority of the committee, in a report to the legislature dated January 13, 1949, strongly opposed adoption even as a *prima facie* code primarily because of the failure of its employed staff to observe its admonition not to tinker with the meaning of the statutes.[6] Nevertheless, the two volumes then resting in the office of the secretary of state were

---

[3]Laws of 1941, chapter 149, § 2, p. 419:

"The said Committee shall, after collaboration with the publishers of the existing codes, determine upon and adopt a complete recompilation of the laws of this state in force of a general and permanent nature, and shall adopt a uniform and perpetual system for the numbering of the sections thereof."

[4]The committee reported to the legislature January 21, 1947, that the work had not then been completed. 1947 House Jour. 440. The legislature of 1949, in substitute house bill No. 681, adopted the work "as a tentative Revised Code of the State of Washington," abolished the 1941 code committee, and created a new agency to continue the work. The bill was vetoed by the governor. 1949 House Jour. 1093.

[5]The 1941 code committee passed out of existence with the adoption of the revised code of Washington by Laws of 1950, Ex. Ses., chapter 16, p. 33, and is not to be confused with the present statute law committee which, on December 1, 1951, employed the code reviser, who has executed with unwavering fidelity the mandate of the statute law committee to conform, with all possible dispatch, the revised code of Washington to the law enacted by the legislature. Title 35 has not yet been reached in that process.

[6]"It is believed by the undersigned Committee members that the code, if it is passed in its present form, will lead to much confusion and mistake, and will vastly increase the amount of work involved in the examination of any legal problem, because the changes in language are so numerous that no section in the new code can be accepted as correctly stating the law as enacted, unless the section is first carefully proofread against the original session law, as passed by the Legislature." Report on Proposed Revised Code of the State of Washington, dated January 13, 1949, by Majority of the Code Committee Appointed by the Washington State Legislature.

adopted by reference only as a *prima facie* compilation of the state's statute law. Laws of 1950, Ex. Ses., chapter 16, p. 33.

But the legislature specifically disclaimed any intention to change the meaning of any statute.[7] The text of § 2 of the act (Laws of 1950, Ex. Ses., chapter 16, p. 33) is as follows:

"The contents of said code shall establish prima facie the laws of this state of a general and permanent nature in effect on January 1, 1949, but nothing herein shall be construed as changing the meaning of any such laws. In case of any omissions, or any inconsistency between any of the provisions of said code and the laws existing immediately preceding this enactment, the previously existing laws shall control."

Such is but a statement of the law relative to the standing of a compilation of statutes. In the event of a discrepancy between the law enacted by the legislature and a compilation, the legislative acts control.

The rule was stated by this court in *Spokane, Portland & Seattle R. Co. v. Franklin County*, 106 Wash. 21, 179 Pac. 113, as follows:

" . . . But the compilation has no official sanction in the sense that it controls the construction the court must put upon the several acts. If it includes matter superseded, the matter must be rejected, and if there are matters not superseded and not contained therein, they must be searched out and given effect."[8]

---

[7] " . . . In the compilation of the Code some of the provisions for the protection of seamen contained in the Act of 1872 were placed in Title 46, which relates to shipping, and particularly in Chapter 18 of that title, which relates to 'Merchant Seamen.' They had previously been re-enacted, as parts of the Revised Statutes, along with § 65. The Acts of 1915 and 1920 were placed in the same chapter and title, and were thus brought into contiguity with the sections carried over from the Act of 1872. Very clearly the change of location did not work a change of meaning. The rule of construction laid down in § 713 must be confined to those sections of the chapter which were contained in the Act of 1872, or in the equivalent provisions of the Revised Statutes, before the Code had rearranged them. The compilers of the Code were not empowered by Congress to amend existing law, and doubtless had no thought of doing so. . . ." *Warner v. Goltra*, 293 U. S. 155, 161, 79 L. Ed. 254, 55 S. Ct. 46.

[8] *Id.*

The original compilation of the Revised Code of Washington divided Laws of 1889-90, chapter 7, § 15, p. 141, into two sections, as follows:

"35.13.01 Municipal corporations now or hereafter organized are bodies politic and corporate under the name of the city of ........................, or the town of ........................, as the case may be, and as such may sue and be sued, contract or be contracted with, acquire, hold, possess, and dispose of property, subject to the restrictions contained in this title, have a common seal, and change or alter the same at pleasure, and exercise such other powers, and have such other privileges as are conferred by this title."

That section is now codified as RCW 35.21.010.[9]

"35.17.02 Not more than one square mile in area shall be included within the limits of municipal corporations of the fourth class, nor shall more than twenty acres of unplatted land belonging to any one person be taken into its limits without the consent of the owner thereof."

That section is now codified as RCW 35.27.020.[10]

As so changed, the two sections were a part of the Revised Code of Washington adopted in 1950.

The reason, if any, for the division and alteration in § 15 is a complete mystery, and the reasons for the actions of those employed by the committee will never be known. If the committee met, it left no minutes. The only records left are the notes which, in reference to 35.17.02 (now RCW 35.27.020), are, in words and figures, as follows:

"8935 Pt[11] Restrictions upon area."

The notes under 35.13.01 (now RCW 35.21.010) are in the following words and figures:

"8935[12] General corporate powers. (Proviso transferred to chapter 35.17.02.)"

But we are not called upon to deal with the original text of the Revised Code of Washington but with Laws of 1951, chapter 109, p. 270.

---

[9]The renumbering system was adopted by the legislature in Laws of 1951, chapter 5, p. 18.

[10]Id.

[11]These numbers refer to Remington's Revised Statutes.

[12]Id.

■ The laws of Washington can be amended only in the manner provided by Art. II, § 37, of the state constitution, which is as follows:

"No act shall ever be revised or amended by mere reference to its title, but the act revised or the section amended shall be set forth at full length."

Oblivious of this specific constitutional requirement, the legislature in Laws of 1941, chapter 149, § 4, p. 419, enacted as follows:

"The Legislature shall amend or repeal laws by code numbers. . . ."

That sentence was appropriately amended by Laws of 1959, chapter 95, § 5, p. 551, to read as follows:

"The legislature in amending or repealing laws shall include in such act references to the code numbers of the law affected. . . ."

The enacting clause in Laws of 1951, chapter 109, p. 270, is:

"Section 35.27.020, R.C.W., as derived from section 15 of 'An act providing for the organization, classification, incorporation and government of municipal corporations,' Laws of 1889-90, page 141, is amended to read as follows:"

■ In this respect, the 1951 legislature was following its own unconstitutional device for amending a section of an act in disregard of the specific constitutional mandate. The act before us does not purport to amend a section of an act, but only a section of a compilation entitled "Revised Code of Washington," which is not the law. Such an act purporting to amend only a section of the *prima facie* compilation leaves the law unchanged.[13]

---

[13]There are many instances in the revised code of Washington in which a session law section has been divided into two or more RCW sections with subsequent amendments of one or more, but less than all, of the RCW sections derived from a single session law section. The statute law committee has attempted to remedy this defect. For example, see the reviser's note to Laws of 1957, chapter 13, p. 51, 55, the first two paragraphs of which are:

"The Statute Law Committee in review by Title 17 of the Revised Code of Washington has noted several instances where a session law section had been divided into two or more RCW sections and the legis-

The first portion of Laws of 1889-90, chapter 7, § 15, p. 141, down to the proviso, and the first portion of the proviso, which is now codified as RCW 35.21.010, were dropped in the amendatory act (Laws of 1951, chapter 109, p. 270). It is apparent that the legislature, likewise, changed the word "within" as it appeared in the Laws of 1889-90, chapter 7, § 15, p. 141, to "into." The 1941 code committee had no part in these changes which were made exclusively by the legislature. Although the legislature did not intend to repeal the first fragment of the earlier law (now codified as RCW 35.21.010), nevertheless, an amendatory act which omits part of an original section repeals the portion so omitted.[14] This was made abundantly plain by our decision in *Mudgett v. Liebes,* 14 Wash. 482, 486, 45 Pac. 19, in which we said:

"Our constitution requires (art. 2, § 37) that where a section of an act is amended the section must be set forth at length, and it follows from this that that part of the original section which is not repeated in the amendatory act is repealed, but that part of the original enactment which is repeated remains the same as if there had been no amendment."

The legislature so recognized in 1955, since which time it has abandoned the formula of attempting to amend a section of the Revised Code of Washington and has amended both the Revised Code of Washington section and the session law section.[15]

Such effectively amends existing law.

Appellant's argument is that, from the face of Laws of

lature has subsequently amended one or more, but less than all, of the RCW sections derived from the session law section.

"The purpose of this bill is to enact the RCW sections, thereby ratifying the division of the session law section into several code sections, and curing any possible defect arising from the amendment of less than the whole session law section."

[14]This portion of the original section 15, Laws of 1889-90, chapter 7, p. 141, is now codified as RCW 35.21.010.

[15]For purposes of illustration, consider Laws of 1955, chapter 8, § 1, p. 10:

"Section 1. Section 4, chapter 90, Laws of 1919 and RCW 28.02.030 are each amended to read as follows:  . . ."

1951, chapter 109, p. 270, the limitation applies solely to annexation. Such is set out in the title of the act, and the body is wholly consistent therewith.

"AN ACT relating to *annexation* of unplatted lands to fourth class municipal corporations, and amending section 35.27.020, R.C.W.

"*Be it enacted by the Legislature of the State of Washington:*

"Section 1. Section 35.27.020, R.C.W., as derived from section 15 of 'An act providing for the organization, classification, incorporation and government of municipal corporations,' Laws of 1889-90, page 141, is amended to read as follows:

"No more than twenty acres of unplatted land belonging to any one person shall be taken into the limits of municipal corporations of the fourth class without the consent of the owner thereof." (First italics supplied.)

■ Therefore, if the enactment were valid, the earlier law would be repealed, and appellant's contention that the law limits annexation only would be correct, and the trial court's judgment would properly have to be reversed. However, since Laws of 1951, chapter 109, p. 270, is, for the reasons stated, invalid, the original act, Laws of 1889-90, chapter 7, § 15, p. 141, is left unchanged, and is controlling in the present controversy. That statute applies to both annexation and original incorporation.

Appellant's argument that the Port of Tacoma has no authority to petition the city for annexation of its own property is without merit. RCW chapter 53.08 endows such districts with power to own land, one of the attributes of which is the right to petition for annexation by a city. RCW 35.13.130.

It is unnecessary to discuss appellant's argument respecting priority because of the invalidity of the appellant's attempt to organize a fourth-class city.

The judgment in each case is affirmed.

HILL, DONWORTH, and OTT, JJ., concur.

MALLERY, J. (concurring in the result)—The appellants filed a petition to incorporate a town which would contain

two large tracts of land that are connected by a strip of land only three hundred fifty feet wide. The easterly tract contains approximately one quarter of the area and all but forty-three of the residents of the proposed town. The westerly tract, consisting largely of a tideflat, has been developed by the Port of Tacoma as industrial property and contains one thousand thirty-two acres owned by the Port, most of which is unplatted. The Port has steadfastly refused its consent to have any of its unplatted land included in the proposed town.

The Port's comprehensive long-range plan for the development of the tideflat industrial development district contemplates the expenditure of five million dollars for roads, water mains, sewers, and fill. The Port possesses ample powers to do these things under existing law.

The Port commissioners believe that the incorporation of a fourth-class town to include this industrial area would hamper its development. Accordingly, when previous petitions for incorporation of the town in question were filed, the Port on each occasion condemned property in the area of the proposed town and thereby reduced its population below three hundred, the number required by RCW 35.02-.010 for incorporation. The incorporators countered these maneuvers with new petitions covering larger areas with sufficient people. The present petition is referred to as Tidehaven petition No. 3. It was filed with the Pierce county auditor on June 5, 1958, and was transmitted to the board of county commissioners on June 20, 1958.

As a counter move to this petition, the Port commissioners filed with the city clerk of Tacoma, on June 18, 1958, a petition for annexation to Tacoma of thirty acres of property owned by the Port. The exclusion of these thirty acres would bisect the proposed town into the two noncontiguous tracts of land described above. The annexation petition was transmitted to the Tacoma city council on June 23, 1958, and the council by ordinance No. 16,158 passed on July 28, 1958, annexed the thirty-acre strip to the city.

Since the appellants' petition for incorporation was filed prior to the annexation of the thirty-acre strip by the city of Tacoma, the appellants contend that the purported subsequent annexation is invalid. The respondents deny that appellants' priority is determinative of the issue because the appellants never had a right under the statute to include at any time the Port's thirty acres of land in their proposed incorporation over their objection. The appellants think they do have such a right for the reason that the statutory twenty-acre provision relied upon by the respondents applies only to *annexations* and not to *incorporations*. The issue thus hangs upon the meaning of the statute in question.

I think the majority are in error in their approach to the statutory interpretation necessary to the decision of the case. It is my position that the intention of the statute may be authentically ascertained by making reference directly to the session laws containing the statutory provisions here in question.

Accordingly, by turning to Laws of 1889-90, chapter 7, § 15, p. 141, we find that it reads:

"Municipal corporations now or hereafter organized are bodies politic and corporate under the name of the city of .............................................., or the town of .............................................., as the case may be, and as such may sue and be sued, contract or be contracted with, acquire, hold, possess and dispose of property, subject to the restrictions contained in other chapters of this act, having a common seal, and change or alter the same at pleasure, and exercise such other powers, and have such other privileges as are conferred by this act: *Provided,* That not more than one square mile in area shall be included within the corporate limits of municipal corporations of the fourth class, nor shall more than twenty acres of unplatted land belonging to any one person be taken *within* the corporate limits of municipal corporations of the fourth class without the consent of the owner of such unplatted land." (Italics mine.)

This section was amended by the Laws of 1951, chapter 109, § 1, p. 270, which reads:

"Section 35.27.020, R.C.W., as derived from *section 15 of 'An act providing for the organization, classification, in-*

*corporation and government of municipal corporations,'
Laws of 1889-90, page 141, is amended to read as follows:*
"No more than twenty acres of unplatted land belonging to any one person shall be taken *into* the limits of municipal corporations of the fourth class without the consent of the owner thereof." (Italics mine.)

I think the majority opinion is in error in holding that chapter 109 is invalid because it offends Art. II, § 37, of the state constitution, which provides:

"No *act* shall ever be revised or amended by mere reference to its title, but the *act* revised *or the section* amended shall be set forth at full length." (Italics mine.)

This holding is unwarranted because the language in the act which I have italicized specifies in the required constitutional manner what section of what act is being amended. This full compliance with the constitutional requirement should not be nullified by this court because of the words "Section 35.27.020, R.C.W., as derived from," which the legislature included in addition to the constitutional requirement.

It is at least certain that the part of the Laws of 1889-90, chapter 7, § 15, p. 141, with which we are concerned, was amended only by changing the word "within" to "into." The effect of the 1951 act upon the remainder of § 15 is in no way relevant to our present inquiry and if passed upon could be nothing more than dicta in any event.

In *State ex rel. Cummings v. Johnson,* 105 Wash. 93, 177 Pac. 699, we interpreted the 1889-90 act so as to make the twenty-acre limitation applicable to an original incorporation. The 1951 amendment in changing the word "within" to "into" does not indicate an intention to reverse that case and make the twenty-acre limitation inapplicable to original incorporations.

I think the respondents' contention that the twenty-acre limitation applies to incorporations as well as annexations is correct, and for this reason I agree that the judgment should be affirmed.

WEAVER, C. J., concurs with MALLERY, J.

FINLEY, J. (concurring in part)—To effect an amendment of an existing statute, Art. II, § 37, of our constitution requires that the existing statute, or sections thereof, as amended, be set out in full. Laws of 1951, chapter 109, p. 270, refers directly to, and specifically amends, RCW 35.27.020, but refers only indirectly to Laws of 1889-90, chapter 7, § 15, p. 141, and does not specifically amend the prior statute in compliance with Art. II, § 37. It follows, and thus I agree with the conclusion of the majority, that Laws of 1889-90, chapter 7, § 15, p. 141, in its original form must still be given effect as the law of this state.

I am not prepared at this time in this case to brand Laws of 1951, chapter 109, p. 270, as a complete nullity, I prefer to withhold judgment on this until that issue is more squarely presented than I think is instanced in the case at bar. However, even assuming, *arguendo*, that the legislature intended to accomplish something, and did not do a vain and useless act in duly enacting the 1951 statute, I find no compelling literal inconsistency between the prior statute and the 1951 enactment. On the basis of the foregoing views, I agree with the conclusion reached in the instant case by the majority in giving the force and effect of law to the pertinent provisions of Laws of 1889-90, chapter 7, § 15, p. 141.

ROSELLINI and HUNTER. JJ., concur with FINLEY, J.

---

June 19, 1961. Petition for rehearing denied.