[No. 36564. Department Two. November 21, 1963.]

THE STATE OF WASHINGTON, *on the Relation of John Thompson, et al., Appellant,* v. CHARLES O. CARROLL, *Respondent.**

*Reported in 387 P. (2d) 70.

· Jerry T. Haggerty, for appellant.

Charles O. Carroll, James J. Caplinger, and William L. Paul, Jr., for respondent.

PER CURIAM.—This is an appeal from a judgment of the trial court refusing to issue a writ of mandamus to compel the prosecuting attorney of King County to institute a quo warranto proceeding seeking the dissolution of the town of Black Diamond, Washington, as a municipal corporation.

After complying with the necessary procedural steps set out in RCW 35.02, the King County Board of Commissioners ordered that an election be held for the inhabitants of the area involved to determine whether the town of Black Diamond should be incorporated as a city of the fourth class. The election results were favorable to such incorporation. The commissioners, by order duly entered in the minutes of the board, declared the town legally incorporated.

Nearly 3 years later, the relators herein (appellants) brought the present action, claiming that the incorporation was void, or voidable, on one or both of the following grounds:

1. That the area comprised in the incorporation of Black Diamond is more than 1 square mile, to wit, 2 5/10 square miles.

2. That the relators each own more than 20 acres of unplatted land which was included in the corporate limits of Black Diamond without their consent.[1]

It appears from the record that the town, as incorporated, does in fact contain more than 2 5/10 square miles, that the holdings therein of certain relators exceed 20 acres, and that they did not *expressly* consent to the inclusion of their land within the corporate boundaries. It also appears that the relators had both legal and actual notice of the pro-

---

[1]RCW 35.21.010 provides, in part: ". . . *Provided*, That not more than one square mile in area shall be included within the corporate limits of municipal corporations of the fourth class, nor shall more than twenty acres of unplatted land belonging to any one person be taken within the corporate limits of municipal corporations of the fourth class without the consent of the owner of such unplatted land."

ceedings, the election, and the incorporation, but that they did nothing to note any objections with the board, and did not appeal the order of incorporation. Having rested on their rights for some 3 years, they now seek to compel the prosecutor to bring quo warranto to upset the incorporation.

If the town of Black Diamond is a legal municipal corporation, it would be idle to direct the prosecuting attorney to proceed in quo warranto. We, therefore, proceed directly to the relators' contentions. To answer the first contention—that the incorporation is invalid, because it included within the boundaries of the town more than 1 square mile—it is only necessary to quote from the Laws of 1961, Ex. Ses., chapter 16, § 1:

"Any incorporation of a municipal corporation of the fourth class and any annexation of territory to a municipal corporation of the fourth class prior to the effective date of this act, which is otherwise valid except for compliance with the limitation to the area of one square mile as prescribed by section 15, page 141, Laws of 1889-90, is hereby validated and declared to be a valid incorporation or annexation in all respects."

The relators earnestly contend, as they must to prevail, that the above-quoted statute is unconstitutional, being in contravention of the provisions of the Washington Constitution prohibiting the *creation* of municipal corporations by special laws.[2] Relators base this contention upon conclusions drawn from the judicial treatment of comparable curative statutes which have been enacted by the Washington Legislature.

The first such curative act was enacted shortly after an early statute authorizing municipal incorporations by judi-

[2] The legislature is prohibited from enacting any private or special laws in the following cases:

" . . .

"6. For granting corporate powers or privileges. . . ." Const. Art. 2, § 28.

" . . . Corporations for municipal purposes shall not be created by special laws; but the legislature, by general laws, shall provide for the incorporation, . . . Cities and towns heretofore organized, or incorporated may become organized under such general laws whenever a majority of the electors . . . shall so determine, and shall organize in conformity therewith; . . ." Const. Art. 11, § 10.

cial act ·was declared unconstitutional[3] on the ground that it was·a delegation· of a ·legislative function to the courts. The curative act[4] provided that any town incorporated under the previous unconstitutional act could re-incorporate under a specified section of the new act. This was held unconstitutional[5] on the ground that it was a special law whereby a certain group of towns could be incorpo· rated,· thereby violating § 10 of Article 11 of the State Constitution. In 1893, a second curative act was passed, the validating provision of which read as follows:

" . .. . under which attempted incorporation or re-incorporation an organized government has been maintained since the date thereof, is hereby for all purposes declared legal and valid, and such cities and towns are hereby declared duly incorporated. . . ." Laws of 1893, chapter 80, § 1.

■ This 1893 act was held constitutional in *Pullman v. Hungate* (1894), 8 Wash. 519, 36 Pac. 483. The *Pullman* reasoning is fully applicable to the curative statute involved in the present case, which, like that in *Pullman,* does not violate the constitutional prohibition against the incorporation of municipalities by special legislation. According to *Pullman,* the 1889 act created a special means for incorporation, which applied *only* to those cities which had previously attempted to incorporate under void statutes, and went no further. In contrast to this, the 1893 act applied only to those cities which had not only attempted to incorporate under void statutes, *but also* had maintained an organized government since the time of the attempted incorporation. In other words, the legislature did not seek specifically to legalize the incorporation, or attempted incorporation, but rather sought to legislate as to constituted bodies which existed and were maintaining, under claim of authority so to do, the character of municipal corporations. As said in *Pullman,*

" . . . . The fact that the inhabitants of a certain locality, by their own action, have assumed to act in a par-

---

[3] *Territory ex rel. Kelly v. Stewart* (1890), 1 Wash. 98, 23 Pac. 405.

[4] Laws of 1889-90, chapter 7, § 6.

[5] *Town of Denver v. Spokane Falls* (1893), 7 Wash. 226, 34 Pac. 926.  :

ticular capacity distinguished from that of the people at large, so separates them as a class from the rest of the people of the state that the legislature may properly deal therewith in a different manner than with the rest of the people without its action being special legislation. . . ."

This doctrine of de facto municipal corporations, as applied in *Pullman*, is based upon the need and significance of stability and certainty in matters involving public corporate franchises, and certainly applies with full force to the present case, where the town of Black Diamond had been operating as a municipal corporation for 3 years before its charter was questioned.

■ Relators' second contention is that the boundaries of incorporation included their unplatted land, comprising in excess of 20 acres, without their consent. It is, however, plain that all relators had full notice of the proceedings, and waited 3 years to voice their objections. They made no attempt to enjoin the proceedings, as could have been done on this ground; *Parosa v. Tacoma* (1960), 57 Wn. (2d) 409, 357 P. (2d) 873. Nor did they appeal from the order of the board, as provided in RCW 36.32.330. While the superior court would not have reviewed the desirability of the incorporation, appeal is clearly available to determine if the board complied with the statutes defining their authority. *Selde v. Lincoln Cy.* (1901), 25 Wash. 198, 65 Pac. 192. In view of the actual notice to the relators and their failure to object or pursue any remedy available to them, the findings of the board that the incorporation statutes had been followed and fully complied with must be viewed as an implied finding that there were no non-consenting 20-acre tract owners within the boundaries of incorporation. As the board had jurisdiction to make such a finding and order, the order incorporating the city became final when it was not appealed. *State ex rel. Cummings v. Johnson* (1919), 105 Wash. 93, 177 Pac. 699.

The judgment of the trial court is affirmed.

January 16, 1964. Petition for rehearing denied.