**Marion B. KENNERSON**

v.

**JANE R., INC.**

**Civ. A. No. 67-B-38.**

United States District Court
S. D. Texas,
Brownsville Division.

Oct. 13, 1967.

Ted Dunnam, Port Lavaca, Tex., and Harold J. Rhodes, Berwick, La., for plaintiff-libellant.

Franklin T. Graham, Jr., Brownsville, Tex., for defendant-respondent.

## MEMORANDUM AND JUDGMENT

GARZA, District Judge.

This suit is a libel for wages due, brought under Title 46 U.S.C. Section 596.

This section pertains to seamen only. Libellant claims he is a seaman and is entitled to the protection and benefits of Section 596.

Under this section, a seaman is entitled to double wages for each day that payment is delayed after two days from the termination of employment.

The facts are as follows: Libellant was employed by Jane R., Inc., as a

master. Libellant signed papers with the Customs Office that he was signing on as a master.

■■ These facts are not conclusive as to Libellant's status as a seaman. Barber v. The M/V Blue Cat, 372 F.2d 626, 5 Cir. 1967; American Bank & Trust Co. v. The American Oil Screw Vessel Salvor, 206 F.Supp. 444, by this Court; but Libellant must show duties he performed which would show him to be a seaman.

The M/V CHIEF BLACK DOG, which was the vessel operated by the Libellant, was involved in a time charter agreement between its owner, Jane R., Inc., and Houston Marsh-Marine Company, Inc., and was being used by the charterer in connection with marine seismic surveys.

The Libellant was told to read the time charter agreement, and he admits that he read it.

Paragraph III of the time charter agreement recited as follows:

"The captain shall prosecute all voyages with the utmost safety and shall render all customary assistance to the VESSEL'S crew. The captain (although appointed by OWNER) shall be advised by CHARTERER as to the general location where it wants the VESSEL taken but the captain shall be solely responsible for navigating the VESSEL and reaching such location. Decisions concerning the safety of the VESSEL and its passengers and crew shall rest solely with the captain and any and all decisions as to the safety or advisability of navigating under any conditions shall be the sole responsibility of the captain. Insistence by CHARTERER'S representative and protest by captain shall be entered in the VESSEL'S log and signed by CHARTERER'S representative and VESSEL'S captain."

Libellant does not deny that he performed the duties and responsibilities of master. The Libellant's main contention, however, is that he also performed the duties of a crew member, such as cleaning the commode, waxing the ship and cleaning the deck, and that he was in truth and in fact a crew member and seaman, and master in name only.

■ A "Master" or "Captain" is he to whom are committed the government, care, and direction of the vessel and cargo. He is one who, for his knowledge of navigation and for his fidelity and discretion, has the government of the ship committed to his care and management.

Libellant certainly appears to have been a master.

Libellant was hired and signed on as a master. The time charter agreement called for the master to be (1) responsible for safety of crew and vessel; (2) perform customary assistance to crew; (3) navigate boat and safely arrive at various destinations.

■ It is true that Libellant did not do the hiring which a master usually does. It is true that Libellant was directed *where* to go, but that is normal in an operation of this type, since the boat was chartered for a specific purpose, a supply boat for seismic exploration.

The fact that the Libellant may have done a few duties that a seaman normally performs, is not controlling in this case. Libellant admittedly was not ordered to do so by his employer. There was a seaman on board to perform those duties. Libellant did these extra duties, if at all, because of his own desire to do so. The other crew member, Mr. Hill, testified that Libellant was the master.

Therefore, I find from reviewing all the evidence that Libellant was employed and in fact was the master of the M/V CHIEF BLACK DOG during the time of employment in question.

■ The master of a vessel has no lien on the vessel for his wages. Woolsey v. The Amiga Mia, D.C., 90 F.Supp. 228; affirmed, Walker v. Woolsey, 5 Cir., 186 F.2d 920.

By finding that Libellant was a "master", and not a "seaman", the other issues are readily solved.

Libellant does not come within the provisions of 46 U.S.C. Section 596, and therefore cannot collect any double wages for nonpayment of wages due.

As a side issue in this case, the evidence shows that the Libellant had given a note to Coastal Ice & Fuel Company, of Brownsville, in the sum of $730.00, which note was assigned with recourse to Jane R., Inc., on the 1st of May, 1967, and which the Libellant had agreed to pay by deductions from his pay.

When the Libellant terminated his employment, instead of sending him his wages due, they were applied against said note.

Having found that the Libellant is a master, and not a seaman, the provisions of 46 U.S.C. § 599 are not applicable to him; and the wages due him, when he left the employ of the M/V CHIEF BLACK DOG, were duly credited to his note held by his employer.

It is, therefore, ordered, adjudged and decreed by the Court that the Libellant not being entitled to recovery, his cause of action should be, and it is hereby dismissed.

This constitutes the Findings of Fact and Conclusions of Law of this Court, and is a Final Judgment.