Charles H. JOHNSON, George G. Sanders, Richard A. Entenmann and Andrew Perry Bleeker, Plaintiffs-Appellants,

v.

**OFFSHORE TANKERS SERVICE, INC., Defendant-Appellee.**

No. 85–6304.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 11, 1986.

Decided May 20, 1986.

Paul Miller, Houston, Tex., for plaintiffs-appellants.

Clifford E. Jordan, Santa Barbara, Cal., for defendant-appellee.

Before PREGERSON and BEEZER, Circuit Judges, and JAMESON,* Senior District Judge.

PREGERSON, Circuit Judge.

Charles Johnson, George Sanders, Richard Entenmann, and Andrew Bleeker appeal from an order of the district court granting summary judgment against them in their action for earned wages and penalty wages under 46 U.S.C. § 596. Johnson contends that the district court erred in

concluding that he was not a "seaman" within the meaning of 46 U.S.C. § 713, and that therefore he was not entitled to maintain an action under section 596. All four appellants contend that the district court erred in concluding that 46 U.S.C. § 544, which exempts "sail or steam vessels" from the penalty wage provisions of section 596, also applies to diesel vessels, and therefore bars their claim under section 596.

## BACKGROUND

Johnson, Sanders, Entenmann, and Bleeker worked for Offshore Tankers Service, Inc. ("Offshore Tankers") onboard the *McClelland-Ventura*, a diesel-powered offshore supply vessel. Johnson was master of the vessel.

In May 1983, the *McClelland-Ventura* voyaged from California to Dutch Harbor, Alaska. In late May or early June 1983, shortly after their arrival in Dutch Harbor, the appellants left the vessel, and expressed a desire to return to California. Offshore Tankers provided airline tickets for their return, but deducted the airfare from their final paychecks. In response to this deduction, the appellants filed this action against Offshore Tankers for earned wages and penalty wages under 46 U.S.C. § 596.

## STANDARD OF REVIEW

We review an order granting summary judgment *de novo*. *Alaska v. United States*, 754 F.2d 851, 853 (9th Cir.), *cert. denied*, ─── U.S. ───, 106 S.Ct. 333, 88 L.Ed.2d 317 (1985). We will uphold a grant of summary judgment only if we find, viewing the evidence and factual inferences in the light most favorable to the adverse party, that no genuine issues of material fact exist and that the moving party is entitled to judgment as a matter of law. *Id.*

* Honorable William J. Jameson, Senior United States District Judge, District of Montana, sitting by designation.

## DISCUSSION

### I. *May a Master Bring an Action Under 46 U.S.C. § 596?*

Section 596, in effect at the time Offshore Tankers withheld Johnson's wages,[1] provides, in relevant part:

The master or owner of any vessel making coasting voyages shall pay to every *seaman* his wages within two days after the termination of the agreement under which he was shipped, or at the time such seaman is discharged, whichever first happens.... Every master or owner who refuses or neglects to make payment in the manner hereinbefore mentioned without sufficient cause shall pay to the seaman a sum equal to two days' pay for each and every day during which payment is delayed beyond the respective periods, which sum shall be recoverable as wages in any claim made before the court....

46 U.S.C. § 596 (emphasis added).

Section 713, also in effect when Offshore Tankers deducted airfare from Johnson's paycheck, provides, in relevant part:

[E]very person having the command of any vessel belonging to any citizen of the United States shall be deemed to be the "master" thereof; and every person (apprentices excepted) who shall be employed or engaged to serve in any capacity on board the same shall be deemed and taken to be a "seaman"....

46 U.S.C. § 713.

Johnson argues that the terms "master" and "seaman" are not mutually exclusive within the context of section 596, and that the district court erred in concluding that because he was master of the vessel *McClelland-Ventura*, he was not entitled to sue as a seaman under section 596.

Although no federal appellate court has addressed this issue, the Supreme Court has recognized, in construing section 713, that "[w]hile, within the purview of some of the acts concerning shipping, a master is included in the class designated seamen, in others the expression excludes the master." *Blackton v. Gordon*, 303 U.S. 91, 92,

58 S.Ct. 417, 417–18, 82 L.Ed. 683 (1938) (footnote omitted) (construing section 713 in the context of a statute prohibiting the attachment of seamens' wages, and holding that the statute did *not* apply to masters).

In *Warner v. Goltra*, 293 U.S. 155, 55 S.Ct. 46, 79 L.Ed. 254 (1934), the Court held that the terms "master" and "seaman" were *not* mutually exclusive when used in a statute providing a remedy for bodily injury. In such circumstances, the Court noted, "master and seaman are approximately equal." *Id.* at 162, 55 S.Ct. at 49 (Cardozo, J.). The Court recognized, however, that under other circumstances the terms might be mutually exclusive:

A goodly number [of statutes] give a remedy to seamen for wages wrongfully withheld, or define terms of payment that agreement may not vary. In respect of dealings of that order, the maritime law by inveterate tradition has made the ordinary seaman a member of a favored class. He is a "ward of the admiralty," often ignorant and helpless, and so in need of protection against himself as well as others. The master, on the other hand, is able in most instances to drive a bargain for himself, and then when the bargain is made, to stand upon his rights. Discrimination may thus be rational in respect of remedies for wages.

*Id.*

Two federal district courts have relied on this language from *Warner v. Goltra*, and have held that masters may not maintain an action for penalty wages under section 596. *See Markakis v. SS Volendam*, 475 F.Supp. 29, 31 (S.D.N.Y.1979) (section 596 "is limited to claims by seamen and does not afford recovery of double wages by masters."); *Ramsey v. M/V Modock*, 372 F.Supp. 1131, 1133 (E.D.La.1974) ("Under the penalty wage statute, 46 U.S.C. § 596, only seamen can claim the penalty; Mr. Ramsey was hired as a master...."), *aff'd sub nom. Keys v. M/V Modock*, 546 F.2d 908 (5th Cir.) (mem.), *cert. denied*, 434 U.S. 826, 98 S.Ct. 74, 54 L.Ed.2d 83 (1977). *See*

---

**1.** In August 1983, Congress repealed the four statutes discussed in this opinion, 46 U.S.C. §§ 367, 544, 596, and 713.

*also Kennerson v. Jane R., Inc.*, 274 F.Supp. 28, 30–31 (S.D.Tex.1967) (master did "not come within the provisions of 46 U.S.C. Section 596, and therefore [could not] collect any double wages for nonpayment of wages due.").

■ We follow the reasoning of the district courts that have addressed this issue, and hold that a master is not entitled to bring an action as a "seaman" under section 596.

## II. Does 46 U.S.C. § 544 Apply to Diesel Vessels?

Section 544, in effect at the time Offshore Tankers withheld the appellants' wages,[2] exempts *"sail or steam vessels engaged in the coastwise trade"* from the provisions of section 596. 46 U.S.C. § 544 (emphasis added).

The appellants contend that section 544 is inapplicable in this case, because the *McClelland-Ventura* is a diesel vessel, powered by internal combustion rather than sail or steam. Offshore Tankers argues that section 544 should be construed to include vessels powered by internal combustion. No federal court has decided this issue conclusively.[3]

When interpreting statutes, we look first to the language itself. "[T]he plain meaning of the words used is controlling, 'absent a clearly expressed legislative intention to the contrary.'" *Powell v. Tucson Air Museum Foundation of Pima County*, 771 F.2d 1309, 1311 (9th Cir.1985) (quoting *Consumer Product Safety Commission v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980)).

The language of section 544 is plain. It does not refer simply to "vessels engaged in the coastwise trade," but to *"sail or steam* vessels engaged in the coastwise trade." 46 U.S.C. § 544 (emphasis added). There is no indication that Congress ever intended section 544 to apply to vessels other than those powered by sail or steam.

Offshore Tankers notes that internal combustion engines had not yet been invented when section 544 was enacted. Thus, Offshore Tankers contends that the absence of a clearly expressed legislative intent at the time of enactment to extend section 544 to internal combustion engines should not be controlling.

Congress has, however, amended *other* legislation governing sail and steam vessels to include vessels powered by internal combustion. Congress became aware in the 1930's that laws regulating steam vessels might not apply to vessels powered by internal combustion. *See Kelly v. Washington*, 302 U.S. 1, 6–7, 58 S.Ct. 87, 90–91, 82 L.Ed. 3 (1937). In 1936 Congress enacted 46 U.S.C. § 367, which provides that "[e]xisting laws covering the inspections of steam vessels are made applicable to seagoing vessels ... propelled in whole or in part by internal-combustion engines." Congress clearly was mindful when it enacted section 367 that certain statutes governing steam vessels had become outdated with the advent of internal combustion. Nonetheless, Congress has *never* chosen to update section 544.

■ For the reasons stated above, we hold that section 544 does not apply to diesel vessels.

## CONCLUSION

We affirm as to Johnson on the basis that masters are not entitled to maintain an action for penalty wages under 46 U.S.C. § 596. We reverse as to Sanders, Entenmann, and Bleeker on the basis that 46 U.S.C. § 544 does not apply to diesel vessels, and therefore does not bar their claim under 46 U.S.C. § 596.

**2.** *See supra,* note 1.

**3.** The issue has only been addressed in one federal case. In *Gardner v. The L.N. Danzler,* 177 F.Supp. 736, 738 (E.D.Va.1959), the district court held that section 544 applies to diesel-powered vessels. On appeal, the fourth circuit affirmed on other grounds, noting, without addressing the issue, that the plaintiff seaman did "not contend that the diesel powered tugs and the dredges, which have no motive power of their own, are not 'sail or steam vessels' within the meaning of § 544." *Gardner v. The L.N. Danzler,* 281 F.2d 719, 722 (4th Cir.1960).

AFFIRMED IN PART AND RE-
VERSED IN PART.