**TAYLOR et al. v. McMANIGAL et al.**
**No. 7427.**

Circuit Court of Appeals, Sixth Circuit.
April 12, 1937.

584

George S. Baldwin and Alexander, McCaslin & Cholette, all of Grand Rapids, Mich. (McKenna, Harris & Schneider, of Chicago, Ill., and George D. Anthony, of Chicago, Ill., on the brief), for appellants.

Theodore C. Robinson, of Cleveland, Ohio (Wilbur M. Cunningham, of Benton Harbor, Mich., Robinson & Bleecker, of Cleveland, Ohio, and Francis C. Canny and Frederic W. Johnson, both of Cincinnati, Ohio, on the brief), for appellees.

Before MOORMAN, HICKS, and SIMONS, Circuit Judges.

HICKS, Circuit Judge.

Appellant was the operator of the passenger steamer, City of Grand Rapids, plying between Chicago and Milwaukee on Lake Michigan. At the close of the 1934 season the boat was docked in Benton Har-

bor. On May 28, 1935, while she was being conditioned there for the 1935 season, Burgoyne Watkins, an employee of appellant and husband of Ellice Watkins, appellee, was, with another employee, engaged in front of the boiler in putting in a pit plate. While at this work, he undertook to adjust an electric light cord and received a shock from which he died. An award was entered in favor of appellee Ellice Watkins against appellant by McManigal, a Deputy Commissioner of the United States Employees Compensation Commission, under the Longshoremen's and Harbor Workers' Compensation Act (Act of March 4, 1927, c. 509, 44 Stat. 1424, as amended, U.S.C. tit. 33, §§ 901–950 33 U.S.C.A. §§ 901–950). Appellant brought this suit to enjoin the enforcement of the award.

Upon the hearing the bill was dismissed. The sole question was whether Watkins was a member of a crew of the vessel when his death occurred, for, if he was, no compensation was payable. Section 903, 33 U.S.C.A., section 3 of the act, supra. The court found that he was not a member of the crew.

At the outset we are confronted with a controversy over the question of the proper rule for decision by the District Court. Section 921(b) provides that an injunction may issue against the collection of the award "if not in accordance with law." Appellee insists that under this statute the court was limited on its review of the findings of fact by the Deputy Commissioner in connection with the evidence to the question whether there was any substantial evidence to support them. If there was such evidence, the award was in accordance with law and the decree should be affirmed.

Appellant contends that whether Watkins was a member of the crew was a jurisdictional question because if he was, the act excluded him from its protection (sections 902(3), 903(1) U.S.C., 33 U.S.C.A. §§ 902(3), 903(1); that the Deputy Commissioner was unauthorized to make any award at all; and that the injunction proceeding should have been heard and determined de novo without regard to the findings of the Deputy Commissioner. Appellant's position is based upon Crowell v. Benson, 285 U.S. 22, 52 S.Ct. 285, 76 L.Ed. 598.

We are relieved from determining which procedure should have been adopted because the court, after using each of them, came to the same conclusion. The only evi-

dence was that submitted to the Deputy Commissioner. The court not only found that there was substantial evidence to sustain the findings of the Commissioner, but that the weight of the evidence was that Watkins was not a member of the crew. If the latter finding was correct, so was the first and the decree should be sustained. A. O. Smith Corporation v. Petroleum Iron Works Co., 73 F.(2d) 531, 538 (C.C.A.6).

The evidential facts are not in dispute. The question is as to the inference that should be drawn from them.

The City of Grand Rapids was a steel combination freight and passenger vessel, 115 feet long, with a capacity of 2,280 passengers. She lay at the dock at Benton Harbor until June 27, 1935, when she made her initial run between Chicago and Milwaukee for that season. She carried a crew of 120. Appellant began to recondition her on the 1st of May. On that date he employed John Golden as chief engineer for the season. He was authorized to hire assistants and the necessary help to get the boat ready and to operate her when she was commissioned. He employed Gustafson as first assistant and the deceased as second assistant. Deceased began work on May 1. Golden also employed 6 or 7 helpers and added others from time to time until there were 21 in all. The work that Gustafson, Watkins, and the helpers were doing from May 1 up to the time deceased was killed was the usual fitting out of the boat for service, such as putting pumps together, grinding valves, replacing pipes, building bridge walks, and putting in grates.

Appellant also employed Oscar Byork about May 15 and put him in charge of a gang of 10 men employed in fitting out the fore end of the steamer, doing repair work, cleaning life boats, getting rigging and life crafts ready, and painting the interior. This gang was doing this character of work when deceased lost his life. Four of these men later sailed with the boat and the others went ashore. Byork testified that during the time the boat was being conditioned he was just foreman of the paint and fit-out crew and was paid by the day, but that when the boat sailed he was employed as first mate at a salary of $1,000 for two months. The second mate came aboard shortly before June 15, worked for a time at the fit-out work at the hourly rate paid other helpers, but was given the regular season's pay when the season started. One carpenter was engaged in repair work but was not under the supervision of anybody.

There was still another gang of about 20 men in charge of John L. Devins, who was employed by appellant about the 1st of May. Their duties were to fit out the steward department and do such work as scrubbing and cleaning, and they were paid by the hour. Devins testified that before the boat sailed he was superintending the scrubbing and cleaning, but when it sailed he became the chief bar tender.

It was expected that many of the helpers would sail with the boat in different capacities, such as firemen, coal passers, water tenders, oilers, watchmen, bellboys, porters, and many of them did but they were under no obligation to do so. Appellant testified in substance that he never knew until just before the boat sailed who would constitute the crew because "every one had a right to change his mind." To the question, "But when you get ready to sail you choose the crew?" he answered, "Yes. * * * *"

B. F. Morgan, the captain, was employed on June 21 and came on board on the 25th. The vessel was without a cook until it sailed and for that reason the three engineers were each paid $2 a day extra for their board ashore for thirty days of the fitting out period.

The presumption is that in the absence of substantial evidence to the contrary the claim comes within the provisions of the statute (section 920(a), U.S.C., supra, 33 U.S.C.A. § 920(a). We think that the preponderance of the evidence is to the same effect.

The deceased was killed while working as a mechanic. He had not assumed the duties of assistant engineer. The most that may be said is that he, with the other men working on the boat, expected to become members of the crew when it was organized and when the vessel was ready to sail. The commonly accepted meaning of the word "crew" is the whole company which mans a ship and aids in the navigation, or the "ship's company." See Seneca Washed Gravel Corporation et al. v. McManigal et al., 65 F.(2d) 779 (C.C.A.2); DeWald v. Baltimore & Ohio R. Co., 71 F.(2d) 810, 813 (C.C.A.4); United States v. Winn, 28 Fed.Cas. p. 733, No. 16,740; The Bound Brook, 146 F. 160, 164 (D.C.).

The decree is affirmed.