**PUGET SOUND NAV. CO. et al. v. MARSHALL (ANDERSON, Intervener).**

No. 14079.

District Court, W. D. Washington, N. D.

Feb. 8, 1940.

er."

Whittemore & Truscott and Arthur L. Haugan, all of Seattle, Wash., for libelants.

J. Charles Dennis, U. S. Atty., and Gerald Shucklin, Asst. U. S. Atty., both of

Seattle, Wash., for defendant Deputy Com'r.

Knapp & Vinton and Bertil Granberg, all of Seattle, Wash., for intervener.

BOWEN, District Judge.

This is an admiralty action brought by the employer Puget Sound Navigation Company and its liability insurance carrier against William A. Marshall, Deputy Commissioner of the United States Employment Compensation Commission for the 14th Compensation District, to set aside an award made in favor of Ella Anderson, the widow of a deceased employee, by the Deputy Commissioner under the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 901 et seq., and for injunctive relief against the enforcement of the award.

From the evidence before him the Deputy Commissioner found the facts necessary to support the award.

Section 903(a), Title 33 U.S.C.A. (the Longshoremen's Act) provides in part: "Compensation shall be payable * * * only if the disability or death results from an injury occurring upon the navigable waters of the United States * * * and if recovery for the disability or death through workmen's compensation proceedings may not validly be provided by State law. No compensation shall be payable in ,respect of the disability or death of—

"(1) A master or member of a crew of any vessel * * *."

The employer and insurance carrier base their asserted right to the relief sought upon the following alleged grounds:

1. That there is no admiralty jurisdiction here because of alleged failure of proof to show the injury occurred upon navigable water.

2. That no relief can properly be awarded under the Act because it is claimed decedent was a member of the crew of the ferry Kitsap.

3. That no sum can properly be awarded in this case because it has not been and cannot be shown that no relief may validly be provided under the state Workmen's Compensation Act. Rem.Rev.Stat. § 7673 et seq.

4. That there is a failure of proof that decedent's death resulted from the injuries sustained by him and for that reason any award based on the death of decedent is erroneous.

All four of these asserted grounds raising different and distinct issues have been submitted to the court upon the testimony taken before the Deputy Commissioner. All of the issues except that one as to whether decedent's death resulted from the injuries sustained by him in the accident have been tried by this court de novo.

1. The employer and carrier contend the proof is not clear as to how or where the accident happened, whether while decedent was going from ship to dock or from dock to ship, that the statements of the deceased employee as to how and where the accident happened were not corroborated as required by Section 923(a), Title 33 U.S.C.A., and that therefore proof of the necessary admiralty jurisdiction is lacking. But the decedent's declaration that he fell with the ladder into the water while going off the ferry to the dock is sufficiently corroborated by the following circumstances: a ladder tied at one end to the dock, with the other end of the ladder to be rested on the ferry, was provided for use in going from the ferry to the dock; and decedent was found in the water holding on to the lower end of the ladder with the upper end of the ladder tied to the dock, about the time he usually quit work for the day and left the ship to go home.

Accordingly in the absence of contrary proof this court finds, as did the Deputy Commissioner, that decedent fell with the ladder into the navigable water of Puget Sound from the ferry Kitsap as he was leaving the boat at the end of his work shift ending about the time of the accident. This court has admiralty jurisdiction over the subject matter of this action.

2. Was decedent a member of the crew?

The ferry Kitsap was used as an extra ferry to take care of extra week end ferry business which regular daily run ferries could not handle, and the Kitsap had on the day preceding the accident finished one of her week end runs taking care of such extra business. At the end of the last trip of that last week end run the Kitsap had tied up at the Fauntleroy dock in Seattle on Puget Sound to await her next week end extra business run. At that time in accordance with the customary practice of paying off the crew at the end of the day's work and at the conclusion of the Kitsap's week end run, all members of her crew except the decedent were paid off and discharged, but the decedent, as

was customary, was kept on board the Kitsap as an ordinary watchman. He was employed by the employer above named on a salary basis partly for the charitable purpose of giving the decedent (an old man) a steady job, and he was paid by the month, but when the Kitsap was on a ferry run he went as a member of her crew to do such watching and odd jobs as the captain of the Kitsap might order. When she was tied up at the dock between her week end runs decedent was kept on board at 'night as a watchman to perform the ordinary duties of a watchman, but not to perform any other duties, and while so acting as night watchman decedent did not eat or sleep on board the Kitsap but ate and slept at home, and during the vessel's lay up he performed no duties pertaining to her navigation.

During the lay up time, decedent did not constitute the ship's company or crew and he was not a member of any such crew. The vessel, being a ferry, did not during her midweek lay up need a crew, because she was not then being navigated.

"The crew is usually referred to and is naturally and primarily thought of as those who are on board and aiding in the navigation without reference to the nature of the arrangement under which they are on board. [Citing]." Seneca Washed Gravel Corp. v. McManigal, 2 Cir., 65 F. 2d 779, at page 780.

"The commonly accepted meaning of the word 'crew' is the whole company which mans a ship and aids in the navigation, or the 'ship's company.'" Taylor v. McManigal, 6 Cir., 89 F.2d 583, at page 585.

In the case at bar, when the ferry Kitsap laid up at the dock at the end of her last week end's run to await her next week end's run and all of her crew except decedent were paid off, disbanded and left the ship, and the decedent was retained on board to watch the vessel at night, he ceased during the lay up to be a member of the Kitsap's crew and became merely a watchman. "Thus, considering the capacity in which the deceased [then] was employed, his employment was not for navigation purposes." Seneca Washed Gravel Corp. v. McManigal, 2 Cir., 65 F.2d 779, at page 780. "Nor was the decedent the member of a crew. A watchman on a vesssel in port is not a seaman excluded by the statute. [Citing]." Diomede v. Lowe, 2 Cir., 87 F.2d 296, at page 298. And with forceful application here may be noted the following from the Sixth Circuit Court of Appeals: "The presumption is that in the absence of substantial evidence to the contrary the claim comes within the provisions of the statute (section 920(a), U.S.C., supra, 33 U.S.C.A. § 920(a). We think that the preponderance of the evidence is to the same effect." Taylor v. McManigal, 6 Cir., 89 F.2d 583, at page 585.

When therefore decedent in this case became a watchman at night on the Kitsap during the lay up she was on when the accident happened, he thereupon became and remained until the accident a harbor worker within the protection of the Longshoremen's and Harbor Workers' Act, and liability thereunder for compensation for his injuries and death can not be avoided on the alleged ground that he was excepted as a "member of the crew" from the benefits of the Act, because he was not then such a crew member. Union Oil Co. v. Pillsbury, 9 Cir., 63 F.2d 925; Seneca Washed Gravel Corp. v. McManigal, 2 Cir., 65 F.2d 779; Taylor v. McManigal, 6 Cir., 89 F.2d 583; Moore Dry Dock Co. v. Pillsbury, 9 Cir., 100 F.2d 245.

3. Could the state Workmen's Compensation Act apply?

The Kitsap was not a decommissioned ship like that in W. R. Grace & Co. v. Dept. of Labor and Industries, 178 Wash. 4, 33 P.2d 659, nor was she an uncompleted vessel not yet fully commissioned after original construction like that in Grant Smith-Porter Ship Co. v. Rohde, 257 U.S. 469, 42 S.Ct. 157, 66 L.Ed. 321, 25 A.L. R. 1008. She was a fully commissioned ship lying temporarily at dock without a crew awaiting the coming week end when she was expected to have a crew and assist in handling the usual extra ferry business of the next week end. As expected she actually did operate on the ferry route on the week end following the accident.

After quoting from and commenting upon certain leading authorities, the Supreme Court of this state in Puget Sound Bridge, etc., Co. v. Dept. of Labor and Industries, 185 Wash. 349, at page 352, 54 P.2d 1003, 1005, said:

"From these decisions, it is clear that, primarily, the criterion by which it is to be determined whether the claim of an injured workman comes under admiralty jurisdiction or under a state Compensation Act is the place where the injury was sus-

tained. If the injury occurs on navigable water, the rights of the workman and the liability of his employer are to be determined by maritime law. If he is injured on land, his rights are governed by the state Compensation Act, notwithstanding he may be engaged in maritime work.

"The rule, however, is subject to the qualification indicated by the phrase we italicized in our quotation from Minnie v. Port Huron Terminal Co., supra [295 U.S. 647, 55 S.Ct. 884, 79 L.Ed. 1631]. The qualification is this: Even though the employee is injured while engaged in work on navigable water, his rights are to be determined under the state Workmen's Compensation Act, if the enterprise upon which he is at the time engaged is a purely local matter and not concerned with commerce or navigation. The qualification has been held to apply in a case where a carpenter was injured while working on an uncompleted vessel lying in navigable waters. Grant Smith-Porter Ship Co. v. Rohde, 257 U.S. 469, 42 S.Ct. 157, 66 L.Ed. 321, 25 A.L.R. 1008. However, a workman injured while repairing a vessel resting in a dock floating in navigable waters comes within the jurisdiction of admiralty. Gonsalves v. Morse Dry Dock & Repair Co., 266 U.S. 171, 45 S.Ct. 39, 69 L.Ed. 228.

"Again, under the qualification, the court has held the state Compensation Act applicable to workmen engaged in booming and driving logs in navigable waters. Sultan Ry. & Timber Co. v. Department of Labor and Industries, 277 U.S. 135, 48 S. Ct. 505, 72 L.Ed. 820. The qualification was also applied in the case of a driver who met his death while working from a barge thirty-five feet offshore in a navigable river. Millers' Indemnity Underwriters v. Braud, 270 U.S. 59, 46 S.Ct. 194, 70 L.Ed. 470.

"So, in Dewey Fish Co. v. Department of Labor and Industries [181 Wash. 95, 41 P.2d 1099], supra, this court held that the driving of piles for the construction of a fish trap in navigable waters was a matter of purely local concern, unconnected with navigation, and that employees engaged in such work came within the scope of the Workmen's Compensation Act.

"In the instant case, the trial court was of the opinion that appellant's dredging operations were matters of purely local concern, unconnected with navigation, and that its employees working both on land and water came within the scope of the Workmen's Compensation Act. Authority for this view is to be found in State ex rel. Cleveland Engineering Const. Co. v. Duffy, 113 Ohio St. 96, 148 N.E. 572.

"But we think our own case of Puget Sound Bridge & Dredging Co. v. Industrial Ins. Commission [105 Wash. 272, 177 P. 788], supra, is controlling. We are still of the view that dredging operations in navigable waters, in whatever manner conducted, designed to deepen, widen, or construct channels for the purpose of facilitating navigation, fall within maritime jurisdiction. Consequently, workmen injured while on navigable water, engaged in or while being transported to or from such work, do not come within the scope of the Workmen's Compensation Act. See: Great Lakes Dredge & Dock Co. v. Kierejewski, 261 U.S. 479, 43 S.Ct. 418, 67 L.Ed. 756; Spencer Kellogg & Sons v. Hicks, 285 U.S. 502, 52 S.Ct. 450, 76 L.Ed. 903."

How can it be said that while the Kitsap was tied up at the Fauntleroy dock between week end runs she was not a commissioned instrumentality of, or connected or concerned with, commerce and navigation or that the services of the decedent employed on her as a watchman to protect her at night during her midweek lay up were not concerned with her next week end's ferry business, commerce and navigation? It seems obvious that the ferry Kitsap was while so laid up an instrumentality of commerce and navigation and that the watchman's services of decedent in protecting and safeguarding her until her next week end's run likewise were concerned with commerce and navigation and so were maritime services, although he was not then a member of her crew. For these reasons and under the authority of Puget Sound Bridge, etc., Co. v. Dept. of Labor and Industries, 185 Wash. 349, 54 P. 2d 1003, this court rules as must have the Deputy Commissioner that the state Workmen's Compensation Act did not and could not have been made to apply in this case, and that the decedent and his widow were not by reason of any possible coverage of the state Act precluded from the protection and benefits of the Longshoremen's and Harbor Workers' Compensation Act.

Whether or not this court is right in trying either one of the foregoing questions de novo in this court has no effect

upon the result reached by the Deputy Commissioner because the conclusion reached by this court is the same as that reached by the Deputy Commissioner on all three of the foregoing questions.

 4. Was there a failure of proof that decedent's death resulted from the injuries sustained by him when he fell with the ladder while going off shift from the Kitsap to the dock, thus rendering erroneous the award for decedent's death? On this question, this court is bound by the Deputy Commissioner's finding if it is supported by substantial competent evidence. A review of Dr. Buckner's testimony does disclose substantial competent testimony to support that finding. The weight and credibility of such testimony is for the determination of the Deputy Commissioner. He must have believed that testimony and considered it of sufficient weight to support the finding and award of death benefits. This court is bound by that action. South Chicago Coal, etc., Co. v. Bassett, 7 Ill., 104 F.2d 522 (Syl.2).

5. The employer now requests this court for an allowance as a credit on the awards, for payments made by the employer to the decedent after his injury and before his death. Claimant-intervener objects to such credit allowance on the ground that the payments made in installments of $90 each and in the total amount of $270 were in reality a gift since the installments of such payments exceeded the amount which the employer would have had to pay under the statute. Claimant further objects to the allowance of such credit because no specific issue was made of the question at the hearing before the Deputy Commissioner and claimant makes the further objection that in any event any credit allowed should not be applied on the award for death.

The record discloses that proof was made before the Deputy Commissioner of such payments in the amounts above stated. No specific request appears to have been made upon the Deputy Commissioner for allowance of such credit, but claimant was then advised of the amounts of the payments and neither then made nor now makes objection as to the correctness of the payments. Claimant's only objections are those above stated. It would have been better practice if the employer had specifically requested the Deputy Commissioner to allow the credits now claimed, but if that had been done and if any party in interest had been aggrieved by the ruling, this court could have been called upon to review the correctness of the Deputy Commissioner's ruling. In any event the ruling of the case of Alaska Packers Ass'n v. Marshall, 9 Cir., 95 F.2d 279, seems to be that there is a discretion in this court whether to allow such credits as those now claimed, and the exercise of that discretion of this court is not expressly conditioned on the making in the first instance of a similar request before the Deputy Commissioner. Under the circumstances here, particularly in view of the fact that claimant does not object to the correctness of the amounts of the basic payments made, it seems not too late for this court now to be confronted with its duty of exercising that discretion, although the issue was not pressed before, nor ruled upon by, the Deputy Commissioner. This court is of the opinion that the employer should be given credit for such payments on the award for personal injuries but not on the award for the death of decedent. The Deputy Commissioner's award will be modified accordingly. In all other respects the findings and award of the Deputy Commissioner in this case are approved and confirmed.

A decree may be settled upon notice or stipulation.