**FIREMAN'S FUND INSURANCE COMPANY, Plaintiff,**

v.

**Steve J. COX and Sam Vona, Jr., Defendants.**

**No. 87–1632 Civ–T–10(A).**

United States District Court, M.D. Florida, Tampa Division.

Jan. 9, 1989.

Brendan P. O'Sullivan, Fowler, White, Gillen, Boggs, Villareal & Banker, Tampa, Fla., for plaintiff.

David Pope, Thomas Long, Tampa, Fla., for defendants.

## ORDER

HODGES, District Judge.

Plaintiff, Fireman's Fund Insurance Company, issued an insurance policy to Defendants covering their shrimp trawler, LESLIE RAE. The contract of insurance was issued on November 26, 1986 and was to be in effect for one year. The contract described the risks insured and provided that the coverage would be void if the number of crew members on board the vessel exceeded three.

On July 29, 1987, while the insurance policy was in effect, the captain and mate of the LESLIE RAE were attacked by two crew members while the trawler was at sea in the Atlantic Ocean. As a result of the attack, the captain is missing and presumed dead and the mate was injured. Claims have been filed against the Defendants by the mate and by the family and estate of the captain. Fireman's Fund instituted this action seeking a declaratory judgment that it is under no duty to defend or indemnify Defendants for any liability they have incurred or may incur in connection with the July 29, 1987 mutiny aboard the LESLIE RAE. Defendants have answered and counterclaimed seeking enforcement of the policy.

Before the Court is Plaintiff's motion for summary judgment. Plaintiff contends that it is entitled to judgment as a matter of law because it is undisputed that there were five individuals on board the LESLIE RAE at the time of the assault—Phillip Roush, captain; William Carpentier, mate; William Rector, crewmember; William Gossett, Jr., crewmember; and Marie Barnes, cook. Plaintiff contends that all five of these individuals were members of the LESLIE RAE's crew and, therefore, there was no coverage because the policy explicitly limited coverage to those times when three or fewer crew members were aboard the vessel. Defendants have responded contending that only two crew members were on board the LESLIE RAE. Defendants argue that neither the captain, the mate nor the cook were "crew members" within the meaning of the insurance policy.

In determining the parties' intent the Court must look at the contract as a whole and give the disputed provision its natural and most commonly understood meaning. *Gibbs v. Air Canada*, 810 F.2d 1529, 1533 (11th Cir.1987). If the language of the contract is clear and unambiguous, then the parties' intent must be derived from the four corners of the document. *Robert C. Roy Agency v. Sun First National Bank of Palm Beach*, 468 So.2d 399, 405 (Fla. 4th DCA 1985). The Court may consider extrinsic evidence of the parties' intent only if an ambiguity appears on the face of the contract. *Boat Town U.S.A., Inc. v. Mercury Marine Division of Brunswick Corp.*, 364 So.2d 15, 17 (Fla. 4th DCA 1978).

Upon a full review of the contract of insurance, the Court does not believe the meaning of "crewmember" is ambiguous. Since the contract itself provides no definition of "crew" or "crewmember", the Court must look to the commonly accepted definition of those terms in the field of admiralty law for guidance as to the parties' intent. As the District Court for the Western District of Washington has correctly noted,

> The crew is usually referred to and is naturally and primarily thought of as those who are on board and aiding in the navigation without reference to the nature of the arrangement under which they are on board. (citation omitted) "The commonly accepted meaning of the word 'crew' is the whole company which mans a ship and aids in the navigation, or the 'ship's company.'"

*Puget Sound Navigation Co. v. Marshall,* 31 F.Supp. 903, 906 (W.D.Wash.1940) *quoting Taylor v. McManigal,* 89 F.2d 583, 585 (6th Cir.). The language in the policy supports the view that this commonly accepted definition of "crew" was what the parties intended at the time of contracting. For example, the term "crew" and the term "seaman" are used interchangeably in the contract, and the term "seaman" has been defined in this circuit as any employee who (1) was working on or in connection with a vessel in navigation, (2) had a more or less permanent connection with that vessel; and (3) was aboard the vessel primarily to aid in navigation. *Offshore Co. v. Robison,* 266 F.2d 769 (5th Cir.1959). Further, the coverage afforded to the "crew" mirrors the vessel owners' potential liability under the admiralty law remedy of maintenance and cure which applies to *all* those on board in the service of the ship. The only language in the contract which casts any doubt on the definition of "crew" is paragraph (10) which covers "[e]xpenses incurred in resisting any unfounded claim by the master or crew ..." In this section, and in this section only, a distinction is made between "master" and "crew." Even if the captain of the LESLIE RAE is eliminated from the analysis, however, it remains clear that there were four crew members aboard the vessel when the mutiny occurred—Carpentier, Rector, Gossett and Barnes. Defendants' contention that neither mate Carpentier nor cook Barnes were crew members is without merit as both were in the employ of the vessel and in aid of its navigation.[1]

Defendants next contend that, regardless of the number of crew members on board the vessel at the time of the mutiny, Plaintiff cannot escape liability because the additional crew members did not increase the hazard to the vessel. In support of their argument Defendants rely on § 627.409(2), Fla.Stat., which provides:

> A breach or violation by the insured of any warranty, condition, or provision of any wet marine or transportation insurance policy, contract of insurance, endorsement, or application therefor shall not render void the policy or contract, or constitute a defense to a loss thereon, unless such breach or violation increased the hazard by any means within the control of the insured.

Defendants argue that since there is no evidence showing that an increase in the number of crew members bore any relationship to the mutiny, the presence of additional crew members cannot be used by Plaintiff as a basis for denying coverage.

The Court cannot agree. Clearly, the fact that there were four or five crew members on board the LESLIE RAE increased the potential hazard or risk of loss over and above that which Plaintiff had agreed to insure. *See Mutual Fire, Marine & Inland Insurance Co. v. Costa,* 789 F.2d 83 (1st Cir.1986) (insurance carrier could deny coverage when policy set limit of 100 passengers and 116 passengers were actually aboard vessel when injuries occurred). The presence of one or two additional crew members, particularly when the policy expressly set a limit of only three to begin with, is not a mere technical violation of the policy but significantly alters the risk of loss Plaintiff would be called on to bear. *Cf. Windward Traders v. Fred S. James & Co. of New York,* 855 F.2d 814, 818 (11th Cir.1988).

The Court, therefore, concludes and declares that Defendants' losses were not covered by their insurance policy because there were more than three crew members present on the vessel; and, further, the Plaintiff is not precluded from denying coverage under § 627.409(2), Fla.Stat., because the presence of the additional crew members increased the hazard insured against.

Accordingly, Plaintiff's motion for summary judgment is GRANTED. The Clerk shall enter judgment in favor of the Plaintiff and against the Defendants both on the Plaintiff's complaint and on Defendants' counterclaim, with costs to be assessed according to law.

---

1. The Court notes that Defendants have not argued that the vessel cannot be operated with less than four "crew members" or individuals on board.