[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 14-13849

_____

D.C. Docket No.  1:11-cv-22842-PAS

EURYS GAMEZ,

> Plaintiff-Counter
> Defendant-Appellant,

versus

ACE AMERICAN INSURANCE COMPANY,

> Defendant-Counter
> Claimant-Appellee.

_____

Appeal from the United States District Court
For the Southern District of Florida

_____

(January 8, 2016)

Before WILSON and MARTIN, Circuit Judges, and HODGES,[*] District Judge.

_____

[*]Honorable Wm. Terrell Hodges, United States District Judge for the Middle District of Florida, sitting by designation.

HODGES, District Judge:

This is an appeal arising out of an action for breach of contract. Eurys Gamez brought suit in the district court against Ace American Insurance Company ("Ace American") seeking to recover the proceeds of an insurance policy covering a boat. The case proceeded to a jury trial, ending in a verdict and resulting judgment favoring Ace American. The district court denied Gamez's motion for judgment as a matter of law and an alternative motion for a new trial. Gamez appeals.[1] We affirm.

## Background

In late October, 2007, Gamez applied for and obtained from Ace American a "Yachtsman" wet marine insurance policy covering a 2008, 32 foot Glasstream boat and trailer, powered by twin, 275 hp Mercury outboard engines. Gamez took delivery of the vessel on or about November 1, 2007, and promptly gave possession of it to his cousin, Alfredo Hassun. Gamez also gave Hassun full

---

[1]    This court reviews de novo a district court's ruling on a motion for judgment as a matter of law. Lamonica v. Safe Hurricane Shutters, Inc., 711 F.3d 1299, 1306 (11th Cir. 2013); Hubbard v. BankAtlantic Bancorp, Inc., 688 F.3d 713, 723 (11th Cir. 2012). Overturning a jury verdict and granting judgment as a matter of law is inappropriate when substantial evidence supports the verdict. Watts v. Great Atl. and Pac. Tea Co., 842 F.2d 307, 309 (11th Cir. 1988).

permission to use the boat which was thereafter stored and maintained at Hassun's home in Miami.[2]

In late November, 2007, about a month after the purchase of the vessel and the issuance of the Ace American insurance policy, Hassun loaned the boat to Alexis Suarez for a fishing trip. Hassun had only known Suarez for a few weeks, and did not know where he lived, whether he had any boating experience, or whether he was otherwise qualified to operate a 32 foot vessel. Further, Hassun was not acquainted with Suarez's fishing companion, known only by his nickname "Patchey." Suarez took the boat and trailer and then disappeared. Neither he nor the vessel were ever seen or heard from again.

Gamez later filed with Ace American a claim and sworn proof of loss.[3] After an investigation and evaluation of the claim, Ace American notified Gamez that it was rescinding the policy, refunding the premium and denying the claim based upon intentional misrepresentations and concealments of material facts by Gamez in the application for the policy. Gamez responded by suing Ace American

---

[2]    Gamez later reported in his sworn proof of loss of the vessel that "Alfredo Hassun had use of the boat and made the majority of the monthly payments . . . [and] the payments to Ace." In truth, the evidence revealed, and the jury implicitly found, that Hassun was the de facto owner of the vessel.

[3]    The sworn proof of loss recited that the Coast Guard had reported that the vessel was believed to have been stolen and was lost at sea while transporting "refugees."

in the district court for breach of contract due to Ace American's non-payment of the claim.[4]

Ace American defended the action by pleading a number of affirmative defenses including its assertion of fraud in the application for the policy.[5] Specifically, Gamez stated in the application that he was the owner of the vessel whereas the evidence disclosed that he was, for whatever reason, a mere surrogate for Hassun, the true owner. Gamez stated in the application that the boat would be kept at an address given as his residence in Miami (though he did not live there) and the vessel was, in fact, kept at Hassun's residence. Gamez stated in the application that he would be the "primary operator," and no additional operator was identified in the application whereas Hassun was, in fact, the primary operator of the vessel. Gamez stated in the application that he had four years of prior boat

---

[4]    Jurisdiction was predicated upon diversity of citizenship under 28 U.S.C. § 1332. Florida law supplies the rule of decision.

[5]    Altogether, there were three affirmative defenses ultimately submitted to the jury: (1) Ace American's claim of intentional misrepresentations or fraud in the application; (2) an alleged failure by Gamez to give proper notice of the loss; and (3) a defense of illegal use of the vessel at the time of the loss. The jury found for Gamez on the notice issue, and did not reach the illegal usage defense after finding for Ace American on the issue of fraud in the application. There is no remaining dispute about either the notice issue or the illegal usage defense, and neither is involved in this appeal.

ownership experience, whereas he did not own any of the vessels listed in the application.[6]

At trial, an underwriter for Ace American testified, without contradiction by any opposing witness, that the misrepresentations in the application were material to acceptance of the risk and the amount of the premium to be charged.

With regard to fraud in the application, the district court instructed the jury as follows:

> Thus, to establish its affirmative defense based on fraud, ACE American must prove each of the following elements by a greater weight of the evidence: (1) that Gamez or Hassun falsely misrepresented or concealed a specific, material fact; (2) that Gamez or Hassun knew or should have known that the representation was false; (3) that Gamez or Hassun willfully made the representation or concealment with the intention of defrauding ACE American; (4) that Gamez or Hassun intended to induce ACE American to act on the representation or concealment; and (5) that the representation made was one that would affect the liability of ACE American to pay a certain amount of money. Because not every misstatement qualifies as fraud, where, as here, the express language of an insurance contract prohibits intentional acts of concealment, misrepresentation or fraud, the insurer bears the heavy burden of establishing that the conduct complained of was a willful, intentional misrepresentation of fact.

---

[6] The form application signed by Gamez contained a conspicuous "Fraud Warning" regarding "Disclosure of Material Facts," and a written caution that an applicant for insurance "must disclose any information which might influence the company in deciding whether or not to accept the risk, what the terms should be, or what premiums to charge. Failure to do so may render the insurance void. . . ."

The case was then submitted to the jury on the basis of a special verdict form under Federal Rule of Civil Procedure 49(a).  The form required the jury to answer yes or no concerning its findings with respect to whether four separately stated facts had been proven.  Those factual findings were:

We, the jury, make the following findings:

1.      That the Plaintiff, EURYS GAMEZ, has proven his breach of contract claim by the greater weight of the evidence.

YES__X___          NO_____

\* \* \* \* \* \*

2.      That the Defendant, ACE American Insurance Company, established by a greater weight of the evidence that the Plaintiff, EURYS GAMEZ, failed to provide ACE American Insurance Company with proper Notice of the Loss as required in the insurance contract.

YES_____          NO___X___

\* \* \* \* \* \*

3.      That the Defendant, ACE American Insurance Company, established by a greater weight of the evidence that the Plaintiff, EURYS GAMEZ, intentionally misrepresented any material fact or circumstance related to the application of insurance or contract of insurance before or after the alleged loss.

YES__X___          NO_____

If your answer to question 3 is YES, then your verdict is for the Defendant, ACE American Insurance Company, and you should go no further except to have the foreperson sign and date the verdict form

6

and return it to the courtroom.  If your answer to question 3 was NO, then you should proceed to answer question 4.

In accordance with the instruction following finding number three, the jury did not respond to the fourth and last factual finding relating to the defense of illegal usage of the vessel at the time of loss.

Judgment was entered in favor of Ace American on the basis of factual finding number three,[7] and after Gamez's post-trial motions were denied, this appeal ensued.

### The Issue on Appeal

The singular issue of law presented by Gamez involves a construction and application of Florida Statute § 627.409(1)(a)-(b) and (2):

> (1)  Any statement or description made by or on behalf of an insured or annuitant in an application for an insurance policy or annuity contract, or in negotiations for a policy or contract, is a representation and not a warranty. . . . [A] misrepresentation, omission, concealment of fact, or incorrect statement may prevent recovery under the contract or policy only if any of the following apply:
>
> > (a)  The misrepresentation, omission, concealment, or statement is fraudulent or is material to the acceptance of the risk or to the hazard assumed by the insurer.

---

[7]     Gamez challenges, in this appeal, the sufficiency of the evidence sustaining the jury's verdict on the issue of fraud in the application.  Suffice it to say that the evidence, including reasonable inferences to be drawn from it, amply supports the jury verdict and we reject Gamez's contention to the contrary without necessity of further discussion.

7

   (b)  If the true facts had been known to the insurer pursuant to a policy requirement or other requirement, the insurer in good faith would not have issued the policy or contract, would not have issued it at the same premium rate, would not have issued a policy or contract in as large an amount, or would not have provided coverage with respect to the hazard resulting in the loss.

  (2)  A breach or violation by the insured of a warranty, condition, or provision of a wet marine or transportation insurance policy, contract of insurance, endorsement, or application does not void the policy or contract, or constitute a defense to a loss thereon, unless such breach or violation increased the hazard by any means within the control of the insured.

Gamez argues that Subsection (2) of the statute applies to the wet marine insurance policy involved in this case, and that, according to the last clause of Subsection (2), a breach by the insured does not constitute a defense "unless such breach or violation increased the hazard by any means within the control of the insured." Here, of course, the hazard constituting the immediate cause of the loss of the vessel is unknown. It cannot be determined, and Ace American cannot prove, whether that cause – whatever it might have been – was within the control of the insured.

Ace American responds to Gamez's argument, and the district court held in denying post-trial motions, that the statute must be construed as a whole. Subsections (1)(a) and (1)(b) deal with misrepresentations in applications for

8

insurance in general, including marine policies, and provide that such misrepresentations are not warranties and do not invalidate the policy unless the misrepresentation was fraudulently made (fraud in the inducement) <u>or</u>, if innocently made, that it was material to the risk in one of the ways spelled out in Subsection (1)(b).  Innocent misstatements of fact in an application that are not material to the risk do not afford a defense to the insurance company.[8]

On the other hand, Subsection (2) of the statute applies to breaches of the contract of insurance after the application has been submitted and the policy has been issued; and, in the case of marine coverages, any breach of a provision of the policy, even the breach of a warranty, does not forfeit the coverage unless the breach "increased the hazard by any means within the control of the insured."

The flaw in Gamez's argument is that he conflates Subsections (1) and (2) of the statute so that, in his view, the concluding clause of Subsection (2) – "unless such breach or violation increased the hazard by any means within the control of the insured" – would apply to Subsection (1)(a) and (b) as well as Subsection (2).

---

[8]     There is a doctrine in the field of marine insurance law known as *uberrimae fidei* requiring that insureds conduct themselves in the utmost good faith in supplying information to an insurer.  Under this doctrine even unintentional <u>material</u> misrepresentations will render a policy void.  <u>HIH Marine Servs., Inc. v. Fraser</u>, 211 F.3d 1359, 1362-63 (11th Cir. 2000).  That rule is incorporated by Subsection (1)(a) of Florida Statute § 627.409 which provides that a misrepresentation in an application for insurance may prevent recovery if the "statement is fraudulent <u>or</u> is material to acceptance of the risk . . . ." (emphasis supplied).  In this case, however, the Ace American policy expressly limited the defense of material misrepresentation to intentional misconduct by the insured and the jury was so instructed.

This interpretation, however, is simply contrary to the structure and clear wording of the statute. Subsection (1)(a) and (b) plainly applies to statements made by an insured in negotiations or in applications for insurance <u>prior</u> to the insurer's assumption of the risk by binding the coverage or by issuance of the policy. Subsection (2) applies only to "wet marine or transportation insurance polic[ies]," and then only to "breaches or violations" of the contract by the insured <u>after</u> the contract has been formed by issuance of the policy. In those circumstances, "a defense to a loss thereon" will be available only if "such breach or violation increased the hazard by any means within the control of the insured." The purpose of Subsection (2) was "to prevent the insurer from avoiding coverage on a technical omission playing no part in the loss." <u>Windward Traders, Ltd. v. Fred S. James & Co. of New York, Inc.</u>, 855 F.2d 814, 818 (11th Cir. 1988) (quoting <u>Pickett v. Woods</u>, 404 So. 2d 1152, 1153 (Fla. 5th Dist. Ct. App. 1981)).

Thus, in this case for example, but for Gamez's fraud in the application – fraud that was material to the risk – he would win his case because the hazard that ultimately caused the loss is unknown and Ace American cannot prove that such hazard, whatever it might have been, was increased by a means within the control of the insured.

In sum, Subsection (1)(a) and (b) of the statute focuses on misrepresentations material to the <u>risk</u>, that is, material to the insurer's decision

10

whether to issue the policy, and, if so, at what premium. Subsection (2) focuses instead on the actual or immediate cause of the loss – the hazard that occurred – and the question whether that hazard was brought about or increased by the insured's "breach" of a "warranty, condition, or provision" of the contract documents.[9]

None of the cases cited by Gamez support his conflation of the two subsections of the statute such that the last clause of Subsection (2) becomes a condition applicable to pre-contract misrepresentations germane to acceptance of the risk and made at a time when it is impossible to determine whether a "loss" has occurred due to a "hazard" that was "increased" by a "breach" of the policy on the part of the insured. On the contrary, all of the cases applying Subsection (2) involve a loss, but none present an issue of fraud in the application that was material to acceptance of the risk. See AXA Global Risks (UK) Ltd. v. Webb, 2000 WL 33179617 (M.D. Fla. July 28, 2000) (Policy contained warranty made in the application that the insured vessel would be "laid up" on shore, but sank while docked in the water. The breach by the insured increased the hazard and

---

[9]     Subsection (2) of the statute describes the contract to which it applies as an "insurance policy, contract of insurance, endorsement, or application . . . ." The use of the word "application" in that context refers to those situations in which the application contains a warranty relating to a specific hazard, and is incorporated under the terms of the policy. Only in those circumstances could there be a "breach or violation by the insured of a warranty, condition, or provision" of the insurance contract as required by Subsection (2).

11

Subsection (2) of the statute barred recovery); Proprietors Ins. Co. v. Siegel, 410 So. 2d 993 (Fla. 3rd Dist. Ct. App. 1982) (Loss occurring during a charter of the insured vessel did not breach the contract or increase the hazard where the application revealed that chartering of the vessel was an intended use; Subsection (2) did not bar recovery); Windward Traders, 855 F.2d at 818, n. 5 (Breach of warranty regarding vessel's trading locale did not increase the hazard so as to bar recovery under Subsection (2) where the insurer denied coverage solely because of lack of notice); Great Lakes Reinsurance (UK) PLC v. Rosin, 757 F. Supp. 2d 1244 (S.D. Fla. 2010) (decision by Jordan, J.) (Breach of warranty concerning identity of operators voided coverage under Subsection (2) where hazard of negligence by the operator, not named in the policy, was cause of loss and was within control of insured); Eastern Ins. Co. v. Austin, 396 So. 2d 823 (Fla. 4th Dist. Ct. App. 1981) (Warranty that vessel would be used for private pleasure not breached by occasional sale of fish, *i.e*., vessel did not become commercial thereby increasing the hazard under Subsection (2)); Fireman's Fund Ins. Co. v. Cox, 742 F. Supp. 609 (M.D. Fla. 1989) (Breach of warranty regarding size of crew increased the hazard within the control of the insured and Subsection (2) precluded recovery by insured).

The district court correctly denied Gamez's motion for judgment as a matter of law and the alternative motion for a new trial. The judgment is therefore

AFFIRMED.[10]

---

[10]    "Appellant's Motion for Correction or Modification of the Record," and "Appellee's Motion to Strike Appellant's Corrected Reply Brief That Includes New Arguments and Citations to Documents Not Yet a Part of the Record" are both DENIED AS MOOT.